[L. A. No. 28056.   In Bank.   Nov. 25, 1964.]

THE PEOPLE, Plaintiff and Appellant, v. ONE 1960 CAD-
ILLAC COUPE, LICENSE NO. CCB 205, SERIAL
NO. 60 G 024889, Defendant; WILLIAM REULMAN,
Defendant and Respondent.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Appellant.

Sam Bubrick for Defendant and Respondent.

PEEK, J.—The People appeal from a judgment denying forfeiture of a 1960 Cadillac automobile registered to William Reulman and alleged to have been used in the unlawful transportation or to facilitate the unlawful possession of marijuana by Reulman while an occupant thereof. (Health & Saf. Code, § 11610.) The sole question on appeal relates to the propriety of the detention and arrest of Reulman and the subsequent search and seizure which disclosed contraband in his possession which, under the facts, had necessarily been carried in the Cadillac.

The only witness to appear at the trial of the cause was

the arresting officer, Charles Balf, an experienced narcotics investigator in the City of Pasadena. In midafternoon on June 7, 1963, he responded to the call of a private citizen who had discovered a kit containing apparatus used in administering narcotics. The kit was found in a flower planter box adjacent to the sidewalk at the front of his place of business, and had not been there twenty-four hours prior to the report.

The officer and his assistant proceeded to examine the premises, and while at the back thereof Reulman was observed driving the Cadillac in question through the alleyway at the rear of the building. The officer "felt" that Reulman was out of place in the Cadillac and the alleyway and for that reason gave particular attention to his movements. Balf noticed that Reulman was nervous and that he watched the officers in the rear view mirror as the car passed beyond. Reulman drove to the end of the alleyway, turned right to the street on which the building fronted, turned right again to the front of the building and parked immediately across the sidewalk from the point where the kit had been discovered. From that time on he was under constant surveillance by the officers. He left his automobile and walked along the sidewalk in the direction from which the car had approached. He peered into a window of a barbershop and then returned in the direction of his automobile. At this point the officers detained him and requested his identification. Reulman cooperated with the officers in all respects and did not object to the detention. The evidence discloses, except as hereinafter noted, that he was not required to give any information or perform any acts against his will (Cf. *People* v. *Shelton*, 60 Cal.2d 740, 745-746 [36 Cal.Rptr. 433, 388 P.2d 665].)

Reulman, in furnishing identification, gave the officers an expired automobile operator's license. According to the witness he appeared to be very nervous and evasive in answering questions. He first stated that he had never been arrested, but one of the officers made a radio check and was advised that Reulman had a record. He then admitted a prior arrest by a "vice officer."

In answer to another question he stated that he had only been taking a walk along the sidewalk, but later stated that he had gone to the barbershop in search of a friend.

After Reulman denied any knowledge of the kit when exhibited to him the officer asked: "Well, I would like to look at your arm." Reulman answered, "Okay," and the officer requested: "Would you roll your sweater up on your right

arm?'' Reulman did so, revealing five puncture marks on the inside of his elbow. The officer, whose qualifications as an expert in matters involving the illegal use of narcotics was not disputed, testified that one of the marks might have been made ''within the past 24 hours,'' that a second one could have been made within the last two days, and that all the marks were scars from intravenous injections of a kind ''commonly found on subjects using narcotics.'' Reulman denied that the marks were from a hypodermic needle.

When asked if he had a weapon Reulman produced and delivered a knife from his pocket.

Although no formal arrest was made at this point, it must be deemed that Reulman was involuntarily restrained thereafter. He was searched without his prior consent, and an aspirin bottle containing marijuana was found in his possession. He stated: ''Well, you can't blame me for trying,'' when asked about the bottle, and stated that he had concealed it in a vacant lot the day prior to the arrest. He was thereupon formally arrested for possession of marijuana.

Reulman successfully moved for a dismissal of charges against him under section 995 of the Penal Code on the ground that the only incriminating evidence was the product of an unlawful search and seizure. Such a determination constitutes no bar to a redetermination of the propriety of the arrest, search and seizure in the instant proceedings, although the real party in interest is the same person. (*People* v. *Van Eyk*, 56 Cal.2d 471, 477 [15 Cal.Rptr. 150, 64 P.2d 326]; *People* v. *Prewitt*, 52 Cal.2d 330, 340 [341 P.2d 1]; *Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23].)

There are, in fact, two determinations of probable cause which we are called upon to make in the instant case: (1) did the officers have probable cause to detain Reulman for questioning when they first approached him, and (2) if so, did the officers have probable cause based on knowledge thus lawfully obtained when they searched him? As we have concluded that Reulman was not properly detained in the first instance, it becomes unnecessary that we determine the further question of probable cause for the arrest. (See, however, *People* v. *Ibarra*, 60 Cal.2d 460, 463 [34 Cal.Rptr. 863, 386 P.2d 487]; *People* v. *Rios*, 46 Cal.2d 297, 298 [294 P.2d 39]; *People* v. *Elliott*, 186 Cal.App.2d 178 [8 Cal.Rptr. 795]; cf. *People* v. *Ferguson*, 214 Cal.App.2d 772 [29 Cal.Rptr. 691].)

It is well established that a police officer in the discharge of his duties may detain and question a person when

the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary to the proper discharge of those duties. ▮ In *People* v. *Mickelson,* 59 Cal.2d 448, we stated at page 450 [30 Cal.Rptr. 18, 380 P.2d 658] : ". . . we have consistently held that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. . . . Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search. [Citations.]" ▮ And at page 452 we stated as follows: "We do not believe that our rule permitting temporary detention for questioning conflicts with the Fourth Amendment. It strikes a balance between a person's interest in immunity from police interference and the community's interest in law enforcement. It wards off pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified."

▮ In the instant case the officers observed only that defendant was nervous, appeared to be wary of them, and that he parked his car adjacent to the point where the kit was found and thereafter took a rather aimless walk in the near vicinity. Further observations by the arresting officer to the effect that Reulman looked like an untruthful person and as though he did not belong in the Cadillac are not impressive and appear to add little to create any real suspicion, even when we consider that the officer was an experienced narcotics investigator, familiar with the conduct of suspects in like circumstances. (See *People* v. *Cowman,* 223 Cal.App.2d 109 [35 Cal.Rptr. 528].) We find little, if anything, to distinguish Reulman from any other harried citizen who may have innocently parked his automobile in the same spot as did Reulman. The trial judge's finding that reasonable cause for detention and questioning is lacking is thus substantially supported by the record.

▮ The People also contend that, conceding the unlawfulness of the seizure, the exclusionary rule should not be applied in a car-forfeiture case, as the action is civil in nature. Whatever the label which may be attached to the proceeding, it is apparent that the purpose of the forfeiture is deterrent in nature and that there is a close identity to the aims and objectives of criminal law enforcement. On policy the same exclusionary rules should apply to improper state conduct whether the proceeding contemplates the deprivation

of one's liberty or property. (See *People* v. *Cahan,* 44 Cal.2d 434, 445 [282 P.2d 905, 50 A.L.R.2d 513].)

The judgment is affirmed.

Traynor, C. J., Peters, J., Tobriner, J., Dooling, J.,* concurred.

McCOMB, J.—I dissent. I would reverse the judgment for the reasons expressed by Mr. Justice Ashburn in the opinion prepared by him for the District Court of Appeal in *People* v. *One 1960 Cadillac Coupe* (Cal.App.) 39 Cal.Rptr. 421.

Schauer, J.,* concurred.

Appellant's petition for a rehearing was denied December 23, 1964. Mosk, J., did not participate therein. McComb, J., and Burke, J., were of the opinion that the petition should be granted.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.