[Crim. No. 13661.   Second Dist., Div. Three.   Aug. 14, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. RONALD
STEVEN NUNN, Defendant and Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Donald J. Kaplan, Deputy District Attorneys, for Plaintiff and Appellant.

S. Cianchetti for Defendant and Respondent.

MOSS, J.—By information defendant was charged with possessing marijuana in violation of Health and Safety Code, section 11530. His motion to set aside the information was granted on the ground that the marijuana was found on defendant's person as the result of an illegal search and seizure. ▮ Where evidence before the committing magistrate on the issue of the legality of a search and seizure is susceptible of conflicting inferences or consists only of the testimony of prosecution witnesses, the information should not be set aside on the ground that essential evidence was illegally obtained, if, resolving all reasonable inferences in favor of the prosecution, there is any substantial evidence to support a contrary conclusion. (*Badillo* v. *Superior Court*, 46 Cal.2d 269, 271-272 [294 P.2d 23]; *People* v. *Green*, 183 Cal.App.2d 736, 738 [7

Cal.Rptr. 235]; *People* v. *Gil,* 248 Cal.App.2d 189, 194 [56 Cal.Rptr. 88].) Therefore, in stating the evidence before the magistrate, we resolve all conflicting inferences in favor of the People.

On the morning of December 30, 1966, Officers Cockrell and Herp of the Police Department of the City of Azusa saw defendant drive away from a shopping center in that city. Both officers knew defendant by name. Officer Herp recalled that he had seen in defendant's police file several orders suspending defendant's driver's license and specifically remembered having seen an order of revocation when he had looked in the file in April 1966. That order, according to Herp, was effective as of September 1966. Officer Herp had also assisted in arresting defendant for an unspecified offense on a previous occasion. Officer Herp advised Officer Cockrell of his suspicion that defendant was driving with a revoked license. Officer Cockrell followed defendant and stopped him as defendant drove into the driveway of his home. The officer's only reason for stopping defendant was his suspicion that defendant was driving with a revoked license. Defendant alighted from his car and Officer Cockrell asked to see his driver's license. Defendant stated he did not have one. Cockrell asked him where his license was and defendant said it had been taken from him. At this point Officer Herp arrived. While defendant stood between the two officers next to the police car, the officers learned over the police radio that police headquarters held an order of revocation of defendant's driver's license. The officers then advised defendant that he was under arrest for driving with a revoked driver's license and asked him to place his hands on the police car. Officer Herp advised defendant of his constitutional rights and conducted a search "for any type of offensive weapons" by patting down the outside of defendant's clothing. Defendant was wearing a corduroy jacket open in the front. In one of the front jacket pockets Officer Herp "felt an object which was hard and round." Officer Herp testified: "The only thing I could tell is that it was round and approximately two inches long and that it was tightly wrapped, and that it being a hard object, I was unable to identify it by patting down on the outside of the jacket. . . . I obtained no opinion at that time as to exactly what it might be. I felt it, myself, possibly could be some type of an offensive weapon. That was the reason I removed it from the jacket." The object turned out to be marijuana cigarettes in a cellophane wrapping. At the time they

searched defendant the officers intended to take him into custody rather than merely to issue a notice to appear. They did not have a warrant for his arrest.

■ ''It is well established that a police officer in the discharge of his duties may detain and question a person when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary to the proper discharge of those duties.'' (*People* v. *One 1960 Cadillac Coupe*, 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706].) ■ It is the duty of a peace officer to enforce the law which prohibits a person from driving a motor vehicle upon a highway when his driving privilege is suspended or revoked. (Veh. Code, §§ 14601, 40300.) The Vehicle Code provides that a ''licensee shall have the license issued to him in his immediate possession at all times when driving a motor vehicle upon a highway'' and ''shall present his license for examination upon demand of a peace officer enforcing the provisions of this code.'' (Veh. Code, § 12951.) The United States Court of Appeals, Ninth Circuit, has ruled that the necessary implication of these code provisions is that a peace officer in the proper discharge of his duty may stop a driver and demand to see his license without any prior information concerning the status of the driver's license so long as the stop is not a ruse to search for evidence of some possible crime unrelated to the possession of a driver's license.[1] (*Lipton* v. *United States* (9th Cir. 1965) 348 F.2d 591, 593; *D'Argento* v. *United States* (9th Cir. 1965) 353 F.2d 327, 333-334; to the same effect see, *United States* v. *Berry* (3d Cir. 1966) 369 F.2d 386; *Mincy* v. *District of Columbia* (D.C.C.A. 1966) 218 A.2d 507; *State* v. *Williams* (1960) 237 S.C. 252 [116 S.E.2d 858].) The random stopping of motorists is upheld as reasonable because the inconvenience suffered by the motorist is relatively slight while the benefit to the public from strict enforcement of the licensing law is relatively great, and because stopping is the only practical method of enforcement. The danger of permitting random license checks is, of course,

---

[1]The use of a roadblock to check drivers' licenses has also been held to be a reasonable police practice in those jurisdictions which have considered the question. (See for example, *City of Miami* v. *Aronovitz* (Fla. S.Ct. 1959) 114 So.2d 784; *Commonwealth* v. *Mitchell* (Ky. Ct. App. 1962) 355 S.W.2d 686; *Morgan* v. *Town of Heidelberg* (Miss. S.Ct. 1963) 150 So.2d 512; *State* v. *Kabayama* (1967) 94 N.J. Super. 78 [226 A.2d 760]; see also *Interference with the Right to Free Movement: Stopping and Search of Vehicles*, 51 Cal.L.Rev. 907; *Search and Seizure Incident to Traffic Violations*, 4 Willamette L.J. 247.)

that the practice might be used as a subterfuge to enable the officers to conduct a search.

The reasons which have been advanced to validate random stopping apply with greater force to a case such as this where the stop was prompted by information in the possession of the arresting officers that the person stopped was driving with a revoked license. The Vehicle Code authorizes suspension of licenses or revocation without the privilege of reinstatement for periods in excess of three months. (See for example, Veh. Code, §§ 13201, 13350, 13351, 13352, 13353, 13355-13358, 13364.) At the time of the arrest on December 30, 1966, Officer Herp recalled seeing in defendant's police file a revocation order effective September 1966, as well as other revocation orders. There is nothing in the facts as developed at the preliminary hearing to indicate that the real purpose of the officers in stopping defendant was to search him for marijuana. (Compare, *Taglavore* v. *United States* (9th Cir. 1961) 291 F.2d 262.) Therefore, the stop was reasonable.

When defendant admitted that his license had been taken from him, the officers requested and received confirmation of this fact over the police radio. They justifiably relied upon that report in making the decision to arrest defendant. (*People* v. *Ross,* 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606]; *People* v. *Kraps,* 238 Cal.App.2d 675, 679 [48 Cal.Rptr. 89].)[2] Upon receipt of the radio report the officers were authorized to arrest defendant and either give him a notice to appear or take him without unnecessary delay before a magistrate. (Veh. Code, §§ 14601, 40303.)[3] Having decided to exercise their option to take defendant into custody[4] the officers

---

[2]Should the existence of the revocation orders upon which Officer Herp based his suspicion or upon which the officers relied in making the arrest be challenged at the trial, the People will have the burden of proving the existence and contents of such orders by competent evidence thereof. (*People* v. *Wohlleben,* 261 Cal.App.2d 461 [67 Cal.Rptr. 826].)

[3]Section 40303 of the Vehicle Code provides in part: "Whenever any person is arrested for any of the following offenses and the aresting officer is not required to take the person without unnecessary delay before a magistrate, the arrested person shall, in the judgment of the arresting officer, either be given a 10 days' notice to appear as herein provided or be taken without unnecessary delay before a magistrate within the county in which the offense charged is alleged to have been committed and who has jurisdiction of the offense and is nearest or most accessible with reference to the place where the arrest is made.

" . . . . . . . . . .

"(i) Section 14601, relating to driving while license is suspended or revoked."

[4]Had the officers decided to give defendant a notice to appear rather than take him before a magistrate they would have been obligated to

were permitted to search his person "for weapons or for the fruits of or implements used to commit the crime." (*Preston v. United States* (1964) 376 U.S. 364, 367 [11 L.Ed.2d 777, 780, 84 S.Ct. 881]; *Weeks* v. *United States,* 232 U.S. 383, 392 [58 L.Ed. 652, 655, 34 S.Ct. 341].) Traffic violations do not produce "fruits" nor, except for the offenses of driving under the influence of alcoholic beverages or drugs, are they committed through the use of implements that might be found on the person of the offender. In *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], the United States Supreme Court emphasized "that a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope" and that to be reasonable a search must "be clearly circumscribed by the exigencies which justify its initiation." (392 U.S. 16-19, 24, 28, 29 [20 L.Ed.2d at pp. 903-904, 908, 910, 911].) The court noted that a search for weapons "is not justified by any need to prevent the disappearance or destruction of evidence of crime" and that its sole justification "is the protection of the police officer and others nearby. . . ." (392 U.S. 29 [20 L.Ed.2d at pp. 910-911].) ▉ A search for weapons "must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." (392 U.S. 29 [20 L.Ed2d at p. 911].) Although *Terry* v. *Ohio* involved a search for weapons conducted in the absence of probable cause to arrest, its teaching concerning the proper scope of a weapons search

---

release him upon his promise to appear. (*People* v. *Wohlleben, supra,* 261 Cal.App.2d 461, 465.) As used in Fourth Amendment Jurisprudence the term "arrest" presupposes an intent on the part of the arresting officer to take the arrestee in so that he might be put through the steps preliminary to answering for a crime such as booking and arraigning. (See *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 909, 88 S.Ct. 1868]; *United States* v. *Bonanno* (S.D. N.Y. 1960) 180 F.Supp. 71, 77; *Berry* v. *Bass* (1924) 157 La. 81, 82 [102 So. 76, 77].) Although detention for the purpose of issuing a traffic citation is termed an "arrest" by the Vehicle Code, some courts and commentators have questioned whether detention for such a limited purpose should be deemed to justify a search for weapons in the absence of other circumstances which would support a reasonable belief that the arrestee was armed. (*People* v. *Watkins* (1960) 19 Ill.2d 11 [166 N.E.2d 433]; *People* v. *Mayo* (1960) 19 Ill.2d 136 [166 N.E.2d 440]; *People* v. *Gonzales* (1959) 356 Mich. 247 [97 N.W.2d 16]; *People* v. *Zeigler* (1960) 358 Mich. 355 [100 N.W.2d 456]; Simeone, *Search and Seizure Incident to Traffic Violations,* 6 St. Louis U. L.J. 506 (1961); Agata, *Searches and Seizures Incident to Traffic Violations—A Reply to Professor Simeone,* 7 St. Louis U. L.J. 1 (1962), and articles cited in footnote 1, *supra.*) We do not pursue the point here because the evidence before the magistrate indicates without conflict that arresting officers had decided to take defendant in before they searched him.

is equally applicable to a search made after a lawful arrest where the sole justification for the search is the protection of the officers and persons nearby.

The reasonableness of a search must be determined in the light of the particular circumstances. (*Terry* v. *Ohio, supra,* 392 U.S. 1, 21 [20 L.Ed.2d 889, 906].) Since *Terry* v. *Ohio* it cannot be said that in conducting a search for weapons incident to a lawful arrest the arresting officers may in all cases empty the arrestee's pockets. (See *Barnes* v. *State* (1964) 25 Wis.2d 116 [130 N.W.2d 264, 268-269][5]; compare *People* v. *Kraps, supra,* 238 Cal.App.2d 675, 679-680; *People* v. *Strelich,* 189 Cal.App.2d 632, 635-636 [11 Cal.Rptr. 807]; *People* v. *Stewart,* 189 Cal.App.2d 176, 179 [10 Cal.Rptr. 879].) It may or may not be reasonable to explore the arrestee's pockets depending on the results of the pat-down search and the presence of any other indications that the arrestee might be armed.

Officer Herp testified that he emptied defendant's pocket because he believed that the round object he felt during the pat-down might be an offensive weapon. Officer Herp did not specify and was not asked what kind of a weapon he thought it was. The evidence before the magistrate was susceptible of the inference that the officer reasonably believed that the pocket contained a weapon and therefore the trial court committed error in granting defendant's motion to set aside the information.

The order is reversed.

Ford, P. J., and Cobey, J., concurred.

[5]In *Barnes* v. *State, supra,* the defendant was arrested by narcotics officers for a brake light violation. Defendant was "patted down" for weapons and then one of the officers searched his person by aid of a flashlight and found particles of marijuana in an overcoat pocket. The Supreme Court of Wisconsin held that the search was unreasonable in its scope and that, therefore, a motion to suppress the evidence of the contraband should have been granted.