[Crim. No. 13952. In Bank. Jan. 23, 1970.]

THE PEOPLE, Plaintiff and Appellant, v.
WILLIAM COLLINS, JR., Defendant and Respondent.

**COUNSEL**

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Joel Paul Hoffman, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, Loren Mandel, James L. McCormick and Harold E. Shabo, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

PETERS, J.—Defendant was charged with possession of marijuana. (Health & Saf. Code, § 11530.) After a hearing, the superior court granted defendant's motion to set aside the information (Pen. Code, § 995), and dismissed the case. The People appeal.

On September 16, 1968, about 7:30 p.m., Officers Rada and Carreon of the Los Angeles Police Department were patrolling in a black and white police car on Gage between Avalon and Central in south-central Los Angeles. Theirs was the only vehicle on the street. Several days earlier, the officers had been informed at "rollcall" that a grand theft auto suspect, described only as a male Negro, 6 feet tall and weighing 160 pounds, might be found in an area centered a block from that location.

They saw defendant and a companion walking on a well lit sidewalk on the opposite side of the street. Although defendant met the general description of the auto theft suspect, Officer Rada testified that he would not have stopped the defendant but for the latter's "furtive actions." These actions consisted of defendant's turning towards the police car—when it emitted "a clanging noise in the muffler"—and thrusting his hand into his left front pants pocket. Officer Carreon "whipped" the car around and brought it to a stop. As Officer Rada approached on foot, the defendant again thrust his hand into his pocket and quickly withdrew it. The officers ordered defendant to stop, and he complied.

After approaching further cautiously because "maybe [defendant] had a weapon," the officers asked for identification. Defendant replied that he had none. Thereupon Officer Carreon commenced a "pat-down" search of defendant, while Officer Rada searched the inside of defendant's companion's pockets. When he ran his hand over defendant's left front pants pocket, Officer Carreon felt a "little lump;" at that instant, defendant pushed the officer's hand away and said, "Get your hand away from there. You can't search me." Officer Carreon had not seen the bulge before feeling it. "Thinking it was a weapon," the officer put his hand into defendant's pocket and extracted what turned out to be a "lid" of marijuana loosely packed in a plastic bag.

Initially, we have grave doubts as to the lawfulness of defendant's detention, based as it was upon his meeting a general description, turning towards the source of an unusual noise, and making two gestures towards his pocket. (*Terry* v. *Ohio,* 392 U.S. 1, 16, 19, fn. 16, 20-22 [20 L.Ed.2d 889, 902, 904, 905-906, 88 S.Ct. 1868]; *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92 [41 Cal.Rptr. 290, 396 P.2d 706]; *People* v. *Hunt,* 250 Cal.App.2d 311 [58 Cal.Rptr. 385].) A description as general as "A male

Negroe [*sic*], six foot, 160 pounds" fails to distinguish defendant from a substantial portion of the population of south-central Los Angeles. The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Police (1967)—cited by *Terry* for the proposition that misuse of field interrogations is a major source of friction between police and minority groups (392 U.S. at p. 14, fn. 11 [20 L.Ed.2d at p. 901])—strongly criticizes the use of such descriptions. (Task Force Report: The Police, *supra,* at pp. 186-187.)

We find it unnecessary, however, to determine the validity of the detention. Even assuming the detention was lawful, the search of defendant exceeded lawful bounds.

*Terry* v. *Ohio, supra,* reaffirmed the settled principles that "a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope" and that the "scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." (392 U.S. at pp. 17-19 [20 L.Ed.2d at pp. 903-904].) With reference to self-protective weapons searches justified by circumstances short of probable cause for arrest, the court noted: "The sole justification of the search . . . is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." (*Id.,* at p. 29 [20 L.Ed.2d at p. 911].) And in upholding the search before it, the court was careful to point out that the officer "patted down the outer clothing of petitioner and his two companions. He did not place his hands in their pockets or under the outer surface of their garments until he had felt weapons, and then he merely reached for and removed the guns. He never did invade [one companion's] person beyond the outer surfaces of his clothes, since he discovered nothing in his pat-down which might have been a weapon. Officer McFadden confined his search strictly to what was minimally necessary to learn whether the men were armed and to disarm them once he discovered the weapons. He did not conduct a general exploratory search for whatever evidence of criminal activity he might find." (*Id.,* at pp. 29-30 [20 L.Ed.2d at pp. 910-911].)

*Sibron* v. *New York* (1968) 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889], reversed a possession of heroin conviction of a defendant who was observed talking over a period of eight hours to six or eight persons known to the arresting officer to be narcotics addicts. At midnight, the end of this period, the defendant entered a restaurant and spoke to three more known addicts. Although the arresting officer heard none of the conversations, he approached the defendant, asked that the latter accompany him outside, said "You know what I am after," and, when the defendant

mumbled something and reached into his pocket, the officer simultaneously thrust his hand into the pocket and withdrew the heroin. Assuming *arguendo* that there were adequate grounds to search the defendant for arms, the court held: "[T]he nature and scope of the search conducted . . . were so clearly unrelated to that justification as to render the heroin inadmissible. The search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault. Only when he discovered such objects did the officer in *Terry* place his hands in the pockets of the men he searched. In this case, with no attempt at an initial limited exploration for arms, Patrolman Martin thrust his hand into Sibron's pocket and took from him envelopes of heroin. His testimony shows that he was looking for narcotics, and he found them. The search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man. Such a search violates the guarantee of the Fourth Amendment, which protects the sanctity of the person against unreasonable intrusions on the part of all government agents." (392 U.S. at pp. 44-45, 65-66 [20 L.Ed.2d at pp. 924-925, 936].)

In balancing the safety of police officers against the Fourth Amendment's proscription of unreasonable intrusions, *Terry* and *Sibron* thus conclude that in searching a legally detained individual reasonably suspected of being armed, a police officer must be limited to "a careful exploration of the outer surfaces of [the] person's clothing" (*Terry* v. *Ohio, supra,* 392 U.S. at p. 16 [20 L.Ed.2d at p. 903]) until and unless he discovers specific and articulable facts reasonably supporting his suspicion. Only then may an officer exceed the scope of a pat-down and reach into the suspect's clothing for the limited purpose of recovering the object thought to be a weapon. As with other searches without warrants, the burden of pointing to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" such an intrusion properly rests with the People. (Compare *Terry* v. *Ohio, supra,* 392 U.S. at p. 21 [20 L.Ed.2d at p. 906], with *People* v. *Johnson,* 68 Cal.2d 629, 632 [68 Cal.Rptr. 441, 440 P.2d 921].)

■ Feeling a soft object in a suspect's pocket during a pat-down, absent unusual circumstances, does not warrant an officer's intrusion into a suspect's pocket to retrieve the object. A pat-down must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." (*Terry* v. *Ohio, supra,* 392 U.S. at p. 29 [20 L.Ed.2d at p. 911].) The obvious purpose of holding that officers cannot go beyond exploration of the surfaces of a suspect's clothing without being "able to point to specific and articulable facts which, taken together with rational inferences

from those facts, reasonably warrant that [additional] intrusion" is to ensure that the scope of such a search cannot be exceeded at the mere discretion of an officer, but only upon discovery of tactile evidence particularly tending to corroborate suspicion that the suspect is armed. (*Id.*, at pp. 21-22 [20 L.Ed.2d at pp. 905-906].) To permit officers to exceed the scope of a lawful pat-down whenever they feel a soft object by relying upon mere speculation that the object might be a razor blade concealed in a handkerchief, a "sap," or any other atypical weapon would be to hold that possession of any object, including a wallet, invites a plenary search of an individual's person. Such a holding would render meaningless *Terry's* requirement that pat-downs be limited in scope absent articulable grounds for an additional intrusion.

■ Accordingly, we hold that an officer who exceeds a pat-down without first discovering an object which feels reasonably like a knife, gun, or club must be able to point to specific and articulable facts which reasonably support a suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down. Only then can judges satisfy the Fourth Amendment's requirement of a neutral evaluation of the reasonableness of a particular search by comparing the facts with the officer's view of those facts. (*Id.*) Thus, for example, an officer who believes a soft object is a "sap" in the form of a small bag of sand must be able to point to its weight and consistency to justify an intrusion into the suspect's pocket. "To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." (Cf. *Brinegar* v. *United States* (1949) 338 U.S. 160, 176 [93 L.Ed. 1879, 1890, 69 S.Ct. 1302].)

For similar reasons, two recent Court of Appeal decisions held that discovery of a soft bulge did not warrant an intrusion beyond a pat-down. (*Byrd* v. *Superior Court,* 268 Cal.App.2d 495 [73 Cal.Rptr. 880]; *People* v. *Britton,* 264 Cal.App.2d 711 [70 Cal.Rptr. 586].)

The Attorney General relies upon *People* v. *Armenta,* 268 Cal.App.2d 248 [73 Cal.Rptr. 819], which approved a search of a suspect's pocket after a pat-down revealed a soft object therein. The Court of Appeal reasoned that the suspect might have had a "rubber water pistol loaded with carbolic acid or some other liquid, which if used by a suspect could permanently blind an officer." (*Id.,* at p. 251.) For the reasons stated above, to condone fanciful speculations such as that indulged in by *Armenta* would be to permit officers to exceed the scope of a pat-down upon discovering any object on a suspect's person. *People* v. *Armenta, supra,* is disapproved insofar as it conflicts with the views expressed herein.

■ The search of defendant in the instant case must be held un-

reasonable in its scope in that prior to the intrusion into defendant's pocket, Officer Carreon's search had not disclosed evidence which would reasonably support a belief that he had located a weapon on defendant's person. Defendant's disclosure that he had no identification cannot justify bypassing a pat-down for a more extensive intrusion. By pushing the officer's hand away and objecting orally to the search, the defendant provided no basis for a reasonable belief that defendant was reaching for a weapon or that continuing the pat-down would increase any risks to the officer's safety. If merely posing an objection to a search were sufficient to provide justification for a more extensive intrusion upon defendant's personal security, "the right to be free from unreasonable police intrusions would be vitiated by its mere assertion." (Cf. *Tompkins* v. *Superior Court,* 59 Cal.2d 65, 68 [27 Cal.Rptr. 889, 378 P.2d 113]; *Hood* v. *Superior Court,* 220 Cal.App.2d 242, 247-248 [33 Cal.Rptr. 782].) Had Officer Carreon remained suspicious of the "little lump" in defendant's pocket, he should have conducted another more extensive exploration thereof from the exterior of defendant's clothing to determine whether a further intrusion was justified. (Cf. *Byrd* v. *Superior Court, supra,* 268 Cal.App.2d 495.)

The Attorney General suggests that Officer Carreon might have suspected the "little lump" as a "sap." Although the officer stated he thought the lump was a weapon, he did not indicate that he thought the weapon was a "sap" or otherwise indicate the nature of the weapon he thought he felt. The feel of a "lid" of loosely packed marijuana would not reasonably support a suspicion that defendant had a "sap" because a "sap," to be useful as a weapon, would have to possess considerably more mass than the heaviest "lid" of marijuana. In these circumstances, an officer's conclusory statement that he thought there was a weapon does not meet the prosecution's burden of pointing to specific and articulable facts to justify his intrusion into a defendant's pocket.

Accordingly, even if the pat-down before us was justified at its inception, the search became impermissible in its scope when Officer Carreon reached into defendant's pocket. *People* v. *Nunn,* 264 Cal.App.2d 919 [70 Cal. Rptr. 869], and *People* v. *Kraps,* 238 Cal.App.2d 675 [48 Cal.Rptr. 89], cited by the Attorney General, are inapposite in that they upheld searches incident to a valid arrest. In addition, the object felt in *Nunn* was hard. (264 Cal.App.2d at pp. 921, 925.)

The Attorney General suggests that defense counsel's failure to object to Officer Carreon's "conclusion[s]" amounted to a waiver of defendant's contention that the officer's suspicions were insufficient reasonably to support the intrusion into his pocket. Officer Carreon testified that he thrust his hand into defendant's pocket after feeling the bag of loosely packed

marijuana "[t]hinking it was a weapon" and pulled out "what I thought to be a weapon at the time." There was no basis for objection on grounds that the responses quoted were conclusory (cf. *Cope* v. *Davidson,* 30 Cal.2d 193, 200 [180 P.2d 873, 171 A.L.R. 667]), as the officer merely testified as to what he thought—a fact relevant to the reasonableness of his intrusion (*Sibron* v. *New York, supra,* 392 U.S. at p. 64 [20 L.Ed.2d at p. 935]), but not determinative thereof (*Terry* v. *Ohio, supra,* 392 U.S. at pp. 21-22 [20 L.Ed.2d at pp. 905-906]).

■ The People's final argument is that the officers had probable cause to arrest defendant immediately before searching the interior of his pocket, and hence that the final search was incident to a valid arrest. However, it is clear that prior to discovering that the soft object was marijuana, the officers did not have probable cause for arrest, and "[i]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification." (*Sibron* v. *New York, supra,* 392 U.S. at p. 63 [20 L.Ed.2d at pp. 934-935].)

The trial court's order setting aside the information and dismissing the case is affirmed.

Traynor, C. J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

BURKE, J.—I concur in the affirmance of the order setting aside the information and dismissing the case.

McCOMB, J.—I dissent. I would reverse the order for the reasons expressed by Justice Lillie in the opinion prepared by her for the Court of Appeal in *People* v. *Collins* (Cal.App.) 80 Cal.Rptr. 310.