Filed 5/31/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H044419 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1484687) |
| v. | |
| IRVIN SACRITE, | |
| Defendant and Appellant. | |

## I.     INTRODUCTION

After the trial court denied his motion to suppress evidence (Pen. Code, § 1538.5), defendant Irvin Sacrite pleaded no contest to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 1) and using or being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a); count 2), both misdemeanors.[1]  The trial court placed defendant on probation for two years.

On appeal, defendant contends the trial court erred by denying his motion to suppress evidence, claiming the officer was not justified in conducting a pat search. Defendant further contends the officer had no grounds for removing anything from defendant's pocket after the pat search and prior to his arrest.

---

[1] Count 1 was originally charged as a felony, making this "a felony case for the purpose of appellate jurisdiction."  (*People v. Lynall* (2015) 233 Cal.App.4th 1102, 1111.)

Our careful review of the record shows that prior to conducting the pat search, the officer observed "bulges" in defendant's pocket that included "something solid," suggesting that defendant was armed. The officer conducted a pat search because he suspected that the bulge might be a weapon and he would not be able to see defendant's hands while investigating whether defendant was under the influence of a controlled substance. (See *Pennsylvania v. Mimms* (1977) 434 U.S. 106, 107 (*Mimms*) [pat search justified where officer "[f]ear[ed] that the bulge might be a weapon"].) On this record, we conclude that there were "specific and articulable facts" that would have led a reasonable officer "reasonably to conclude in light of his [or her] experience" that defendant "may be armed and presently dangerous." (*Terry v. Ohio* (1968) 392 U.S. 1, 21, 30 (*Terry*).) We also find that the record does not support defendant's claim that the officer removed items from defendant's pocket prior to his arrest. Therefore, we will affirm the order of probation.

## II. BACKGROUND

### A. *Evidence at the Motion to Suppress*

At about 4:00 p.m. on April 16, 2014, San Jose Police Officer John Prim was on duty, in an unmarked police car, with his partner. They were working in an area in which they had conducted prior "clandestine operations" and had made prior arrests.

Officer Prim noticed defendant riding a bike "the wrong way into traffic," in violation of Vehicle Code section 21650.1. Defendant was also carrying and drinking from an open red Budweiser beer can, in violation of San Jose Municipal Code section 10.12.010.

Officer Prim followed defendant and detained him on North Second Street. He began talking to defendant "regarding the aluminum can," and he took the can from defendant, smelled it, and looked inside. He determined that the can contained beer.

2

During the detention, Officer Prim noticed signs suggesting that defendant was under the influence of a controlled substance: he was sweating heavily; he had dried, chapped lips; and he had "fluttering eyelids." Officer Prim intended to cite defendant for the Vehicle Code violation as well as the Municipal Code violation, and he wanted to stand closer to defendant to continue investigating whether defendant was under the influence of a stimulant. However, Officer Prim felt he could not "safely do that" if defendant had "any weapons in his immediate area of his hands." Defendant was taller and weighed more than the two officers: defendant was about six feet, three inches tall and weighed about 210 pounds; Officer Prim was five feet, ten inches tall and weighed about 190 pounds; and Officer Prim's partner was five feet, six inches tall and weighed about 160 pounds.

Defendant was wearing a t-shirt, which "extended beyond his waistband area," so Officer Prim could not see defendant's waistband area. The t-shirt also partially covered the pockets of defendant's shorts. Officer Prim could see "bulges" inside defendant's shorts pockets. He could tell there was "something solid" with round edges, "similar [to the] shape of a cellular phone." Officer Prim "couldn't quite determine" what the object actually was. Based on his "training and experience" as well as his personal safety, he "wanted to conduct a quick pat search to advise if it was a weapon or a potential weapon." From what he had observed, Officer Prim could not "exclude the possibility that what defendant had in his pockets were concealed weapons." Officer Prim would not be able to observe defendant's hands during some of the tests he planned to administer to determine whether defendant was under the influence of a stimulant.

Officer Prim conducted a pat search, which gave him "a better idea" of what defendant had in his pockets: he detected that the bulges were "a possible cell phone and a possible lighter." He did not remove anything from defendant's pockets at that time.

3

He next conducted a Romberg test,[2] observed further indications that defendant was under the influence, and arrested defendant. Officer Prim then reached into defendant's right front pocket—where he had observed the bulges—and removed a cell phone, lighter, and plastic baggie containing methamphetamine. Officer Prim also removed a wallet from defendant's back pocket.

On cross-examination, Officer Prim acknowledged that at the preliminary hearing, he had testified to the following order of events: detention, pat search, observation of symptoms of stimulant use, arrest, and search incident to arrest. However, during the hearing on the motion to suppress, Officer Prim clarified that it was during the detention that he had first observed signs suggesting that defendant was under the influence of a stimulant.

### B. Charges and Motion to Suppress

Following a preliminary hearing, defendant was charged with felony possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 1) and misdemeanor using or being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a); count 2).

Defendant moved to suppress evidence pursuant to Penal Code section 1538.5. He asserted that the prosecution had the burden to justify the detention. (See *People v. Williams* (1999) 20 Cal.4th 119, 130.)

The People opposed the motion to suppress, arguing that the detention was supported by reasonable suspicion, that it was not unduly prolonged, that the pat search was justified, that there was probable cause to arrest defendant, and that the methamphetamine was removed from defendant's pocket during a lawful search incident

---

[2] At the preliminary hearing, Officer Prim described the Romberg test: he asked defendant to close his eyes and estimate 30 seconds. Defendant estimated that 30 seconds had gone by after only 16 seconds.

4

to arrest. With respect to the pat search, the People argued that Officer Prim reasonably suspected that defendant had a weapon in his pocket.

Defendant subsequently filed a "supplemental" motion to suppress. Defendant focused solely on the pat search, arguing that there were no "specific and articulable facts to support a suspicion that [he] was armed and presently dangerous."

After a hearing at which Officer Prim testified, defendant argued that the initial pat search was not justified by a reasonable suspicion that defendant was armed and dangerous.

The prosecutor argued that the search was justified by Officer Prim's observation of a bulge from a solid object in defendant's pocket, the obstruction of defendant's waistband area by his long t-shirt, the signs of "potential stimulant use," the fact that the officer would not be able to see defendant's hands during further investigation, and the fact that the officers were "comparatively substantially smaller" than defendant.

The trial court denied defendant's motion to suppress. The trial court found Officer Prim's testimony "to be credible." The trial court noted that Officer Prim was "going to conduct a further investigation regarding whether the defendant was under the influence," but "would not be able to see his hands." Officer Prim was "concerned about officer safety and concerned specifically because of the bulge in the defendant's pocket." The trial court found that although the bulge "turned out to be a cell phone and a lighter combined," it could have been "a weapon, either a small gun or a knife by the shape and the size." The trial court referenced two cases that had upheld pat searches conducted after an officer saw "bulges in the front of the waistband." (See *Mimms, supra,* 434 U.S. at p. 107; *People v. Snyder* (1992) 11 Cal.App.4th 389, 393.) The trial court did not find it relevant that "the defendant was larger than the two officers" but concluded that "there was reasonable suspicion."

5

### C.    Pleas and Sentencing

After Proposition 47 was passed in November 2014, the information was amended to charge count 1 (possession of methamphetamine; Health & Saf. Code, § 11377, subd. (a)) as a misdemeanor.  Defendant pleaded no contest to that count and to count 2 (using or being under the influence of a controlled substance; Health & Saf. Code, § 11550, subd. (a)).

The trial court suspended imposition of sentence and placed defendant on court probation for two years with a 30-day jail term.

## III.    DISCUSSION

Defendant contends the trial court erred by denying his motion to suppress evidence because Officer Prim was not justified in conducting a pat search.  Defendant further argues that even if the pat search was justified, Officer Prim "acted unlawfully" when he removed the cell phone, lighter, and baggie of methamphetamine from defendant's pocket.

### A.    Standard of Review

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated.  [Citation.]  We review the court's resolution of the factual inquiry under the deferential substantial evidence standard.  The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review.  [Citation.]"  (*People v. Ramos* (2004) 34 Cal.4th 494, 505.)

### B.    The Pat Search

We first address defendant's claim that the pat search was unlawful.

In *Terry, supra,* 392 U.S. 1, the United States Supreme Court held that the Constitution permits "a reasonable search for weapons for the protection of the police officer, where he [or she] has reason to believe that he [or she] is dealing with an armed

6

and dangerous individual." (*Id.* at p. 27.) Before conducting a pat search, "[t]he officer need not be absolutely certain that the individual is armed." (*Ibid.*) A pat search may be conducted where an officer's observations lead the officer "reasonably to conclude in light of his [or her] experience that . . . the persons with whom he [or she] is dealing may be armed and presently dangerous." (*Id.* at p. 30.) "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the search. (*Id.* at p. 21.)

"The judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations. [Citations.]" (*People v. Dickey* (1994) 21 Cal.App.4th 952, 957 (*Dickey*).) The Fourth Amendment has never been interpreted to " 'require that police officers take unnecessary risks in the performance of their duties.' " (*Mimms, supra,* 434 U.S. at p. 110.)

Defendant argues that Officer Prim had no "reasonable basis to believe the bulge [in defendant's pocket] was a weapon, having described the bulge as shaped like a cell phone, an item that many people carry in their pockets."

As defendant acknowledges, pat searches have been upheld in other cases where an officer saw a bulge in the defendant's clothing. For instance, in *Mimms,* the United States Supreme Court found a pat search justified based on an officer's observation of "a large bulge" under the defendant's jacket. (*Mimms, supra,* 434 U.S. at p. 107.) The officer "[f]ear[ed] that the bulge might be a weapon." (*Ibid.*) The court found "little question the officer was justified" in conducting a pat search, explaining, "The bulge in the jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer." (*Id.* at p. 112.)

Defendant asserts that because the bulge in his pocket was "shaped like a cell phone," Officer Prim had no reason to believe defendant was armed. However, the bulges were not just from a cell phone but from a cell phone, lighter, and baggie of

7

methamphetamine. As the trial court in this case observed, weapons come in many shapes and sizes. Moreover, Officer Prim did not testify that the solid object *appeared* to be a cell phone but merely that he observed "something solid" with round edges, "similar [to the] shape of a cellular phone." Officer Prim "couldn't quite determine" what the object actually was, and he could not "exclude the possibility that what defendant had in his pockets were concealed weapons." The gist of this testimony was that Officer Prim suspected that the bulge might be a weapon. (See *Mimms, supra,* 434 U.S. at p. 107 [officer "[f]ear[ed] that the bulge might be a weapon"].)

As established by *Terry,* an officer "need not be absolutely certain that the individual is armed" before conducting a pat search. (*Terry, supra,* 392 U.S. at p. 27.) The officer in *Mimms* did not testify that he *believed* the bulge in the defendant's pocket to actually be a weapon. The officer in *Mimms* merely "[f]ear[ed] that the bulge might be a weapon." (*Mimms, supra,* 434 U.S. at p. 107.) Likewise, *U.S. v. Chaney* (1st Cir. 2009) 584 F.3d 20 (*Chaney*) upheld a pat search conducted after the officer "observed a significant bulge, about the size of a fist, in the right front pocket of [the defendant's] jeans" and became "concerned that the bulge might be a weapon." (*Id.* at p. 23; see *id.* at p. 26.) The defendant had also been evasive in response to questioning about his identity and "what was in his pocket." (*Id.* at p. 27.) That evasiveness, "coupled with the size and rigid nature of the object, gave [the officer] a specific articulable basis for suspecting that Chaney might be armed, thereby justifying a pat-down search." (*Ibid.*)

The testimony of the officers in both *Mimms* and *Chaney* is similar to Officer Prim's testimony that he "couldn't quite determine" what the solid object in defendant's pocket was and thus "wanted to conduct a quick pat search to advise if it was a weapon or a potential weapon." The essence of this testimony was that Officer Prim suspected that the bulge might be a weapon. (See *Mimms, supra,* 434 U.S. at p. 107 [officer "[f]ear[ed] that the bulge might be a weapon"]; *Chaney, supra,* 584 F.3d at p. 23 [officer was "concerned that the bulge might be a weapon"].) As in both *Mimms* and *Chaney*, the

8

objective facts supported Officer Prim's suspicion, since the bulges included "something solid" that, based on his "training and experience," made him concerned that the object could be "a weapon or a potential weapon."

Because the bulges in defendant's pocket provided "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]" the pat search (*Terry, supra,* 392 U.S. at p. 21), the instant case is distinguishable from *Dickey*, in which a deputy testified "that he performed the patdown search for 'officer safety' " but provided no " 'specific and articulable' facts" indicating that the defendant might be armed and dangerous. (*Dickey, supra,* 21 Cal.App.4th at p. 956.) Unlike in this case, the deputy in *Dickey* did not observe any bulges in the defendant's pockets.

In this case, after defendant was detained based on Vehicle Code and Municipal Code violations, Officer Prim observed signs indicating that defendant was under the influence of a stimulant. He intended to conduct a further investigation into whether defendant was under the influence, during which defendant's hands would be out of the officer's view. Officer Prim also observed bulges in defendant's pocket that included "something solid." Officer Prim suspected that the bulges might be a weapon. (See *Mimms, supra,* 434 U.S. at p. 107.) Officer Prim's testimony thus pointed to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]" the brief pat search for weapons (*Terry, supra,* 392 U.S. at p. 21) prior to conducting the further investigation that required him to be in close proximity to defendant.

## C. Removal of Items from Defendant's Pocket

We next address defendant's claim that there was no justification to remove items from defendant's pocket right after the pat search.

"[I]n searching a legally detained individual reasonably suspected of being armed, a police officer must be limited to 'a careful exploration of the outer surfaces of [the] person's clothing' [citation] until and unless he discovers specific and articulable facts

9

reasonably supporting his suspicion.  Only then may an officer exceed the scope of a pat-down and reach into the suspect's clothing for the limited purpose of recovering the object thought to be a weapon."  (*People v. Collins* (1970) 1 Cal.3d 658, 662 (*Collins*); see also *Sibron v. New York* (1968) 392 U.S. 40, 65.)

In *Collins,* officers detained the defendant after observing him engage in " 'furtive actions' " including "thrusting his hand into his left front pants pocket."  (*Collins, supra,* 1 Cal.3d at p. 660.)  An officer conducted a pat search, during which he felt a " 'little lump' " in the defendant's left front pants pocket.  (*Ibid.*)  The officer extracted the object, which turned out to be a baggie of marijuana.  (*Ibid.*)

On appeal, the *Collins* court found that the search "exceeded lawful bounds." (*Collins, supra,* 1 Cal.3d at p. 661.)  Without deciding if the pat search was "justified at its inception," the court concluded that the search "became impermissible in its scope" when the officer reached into the defendant's pocket, since the officer provided no facts to indicate that the object felt like a weapon.  (*Id.* at p. 664.)

Here, the evidence does not show that Officer Prim reached into defendant's pocket immediately following the pat search.  Rather, he conducted the pat search, performed a Romberg test to determine whether defendant was under the influence, arrested defendant, and then removed the items (a cell phone, lighter, plastic baggie containing methamphetamine, and wallet) during a lawful search incident to arrest. (See *Birchfield v. North Dakota* (2016) __ U.S. __ [136 S.Ct. 2160, 2174] [it is a "long-established rule that a warrantless search may be conducted incident to a lawful arrest"].) As the items were not removed from defendant's pocket immediately after the pat search, the pat search was not "impermissible in its scope."  (See *Collins, supra,* 1 Cal.3d at p. 664.)

## IV.    DISPOSITION

The order of probation is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

I CONCUR:

_____
GROVER, J.

*People v. Sacrite*
**H044419**

# Mihara, J., dissenting

I respectfully dissent. My colleagues conclude that a police officer may justify a pat search without identifying any specific, articulable fact suggesting that the citizen is armed. I believe we are bound by established Fourth Amendment precedent, which requires that a pat search be justified by a reasonable suspicion that the citizen is armed. Because the officer in this case did not identify any fact suggesting that defendant Irvin Sacrite was armed, the pat search was unjustified. Consequently, I would reverse the probation order and direct the court to grant defendant's suppression motion.

## I. Background

Defendant moved to suppress the evidence on the ground that the pat search was unjustified. San Jose Police Officer John Prim was the only witness at the suppression hearing. He testified that, at 4:00 p.m. on April 16, 2014, he was the passenger in an unmarked police vehicle being driven by his partner in downtown San Jose. Prim noticed defendant riding a bicycle northbound in the southbound flow of traffic. Defendant was carrying a red Budweiser can in his left hand. The can was open, and Prim saw defendant drink from the can twice. Prim concluded that defendant's operation of his bicycle violated Vehicle Code section 21650.1 [bicycles must go in same direction on the roadway as vehicles] and that his consumption of alcohol violated San Jose Municipal Code section 10.12.010 [no consumption of alcohol on public streets].[1]

---

[1] Defendant does not challenge the validity of the detention.

Prim and his partner followed defendant for about a block and then pulled their vehicle in front of his bicycle. Prim got out of the vehicle and identified himself as a police officer. Defendant responded: "'[H]ow can I help you, sir?'" Prim began talking to defendant about the Budweiser can. Prim took the can from defendant, smelled it, and observed that it was cold and about a third full. It smelled like beer. Prim noticed that defendant was sweating and had "dried, chapped lips" and "fluttering eyelids." Defendant was wearing a long T-shirt that covered his waistband and the "mid-pocket area of the jean shorts" he was wearing. Prim could not see defendant's "waistband area," and he "couldn't tell" what was in the pockets of defendant's shorts because the T-shirt was "blocking half of the pocket." Prim was able to discern "bulges inside the pocket I could see from the outside." He could tell that the bulges were from "something solid and that they had rounded edges to it, similar shape of a cellular phone."

Prim intended to cite defendant for the two code violations. Because he "couldn't quite determine" the nature of the object in defendant's pocket, "[b]ased on my training and experience, also my own safety, I wanted to conduct a quick pat search to advise [*sic*] if it was a weapon or a potential weapon." He was not able to "exclude the possibility" that the object was a weapon. Prim was "unaware if he had a weapon or not" and thought it was possible that defendant had a weapon. In addition, Prim had noticed defendant's "dry, chapped lips, heavy sweating, and fluttering eyelids," which were "consistent with someone under the influence of a stimulant," and Prim was "still investigating" that possibility. Consequently, he wanted to do a pat search because he would need to get closer to defendant to see defendant's pupils and get a closer look at his lips in order to further investigate whether defendant was under the influence of a stimulant. "In order for me to safely do that in that he doesn't have any weapons in his immediate area of his hands, I conducted a pat frisk search to

2

ensure my safety before I continued with the investigation." Prim had also observed that defendant was significantly taller and heavier than either Prim or his partner.

Prim had defendant put his hands behind his back. He held defendant's hands with one hand while he patted defendant's clothing with the other. During the 20-second pat search, Prim found no concealed weapons. The pat search gave Prim "a better idea" of the nature of the bulges. "I was able to detect it was a possible cell phone and a possible lighter" in defendant's right front pocket. After the pat search, Prim performed a "Romberg" test and "noticed symptoms of stimulant use." On that basis, Prim arrested defendant and searched him incident to that arrest. During that search, Prim removed a cell phone, a lighter, and "a plastic baggy" from defendant's right front pocket and a wallet from defendant's back pocket. The "baggy" contained what appeared to be methamphetamine. Neither Prim nor his partner drew a weapon at any point during their interaction with defendant.

The superior court found Prim's testimony to be "credible." Although the court deemed it irrelevant that defendant was larger than either of the two officers, the court accepted Prim's explanation that he needed to do a pat search to facilitate further investigation of whether defendant was under the influence of a stimulant. The court credited Prim's observation that during that investigation, Prim "would not be able to see [defendant's] hands. [¶] And he was concerned about officer safety and concerned specifically because of the bulge in the defendant's pocket." The court concluded that the pat search was supported by reasonable suspicion and denied the motion.

## II. Analysis

Defendant contends that Prim had "no basis to believe appellant was armed after he saw a cellphone-shaped object in appellant's pants pocket."

3

"A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search. [Citation.] 'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]'" (*People v. Redd* (2010) 48 Cal.4th 691, 719.)

A pat search is justified *only* where the police officer conducting the search can "point to specific and articulable facts which, taken together with rational inferences from those facts" demonstrate that the officer "has reason to believe that he is dealing with an armed and dangerous individual . . . ." (*Terry v. Ohio* (1968) 392 U.S. 1, 21, 27.) While "[t]he officer need not be absolutely certain that the individual is armed" (*Terry*, at p. 27), "[a]n inchoate and unparticularized suspicion or hunch is not sufficient, nor is the fact the officer acted in good faith." (*In re H.M.* (2008) 167 Cal.App.4th 136, 143-144.) "Where specific and articulable facts are absent, the pat search cannot be upheld." (*Ibid.*)

Prim's testimony at the suppression hearing failed to identify any "specific and articulable facts" supporting a reasonable inference that defendant was *armed*. My colleagues conclude that Prim's observation of the "bulge" in defendant's pocket supported an inference that defendant was armed. They rely on the United States Supreme Court's decision in *Pennsylvania v. Mimms* (1977) 434 U.S. 106 (*Mimms*). In *Mimms*, the defendant was stopped for driving a vehicle with an expired license plate. When the defendant stepped out of the vehicle at the officer's request, the officer noticed a large bulge under the defendant's jacket. Fearing that the bulge was a weapon, the officer frisked the defendant and discovered a firearm in the defendant's waistband. (*Mimms*, at p. 107.) The United States Supreme Court found: "[T]here is little question the officer was justified. The bulge in the jacket permitted the officer to

4

conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer. In these circumstances, any man of 'reasonable caution' would likely have conducted the 'pat-down.'" (*Mimms*, at p. 112.)

Unlike the bulge under Mimms's jacket, which the officer feared was a weapon, Prim did not claim to fear that the cell-phone-shaped bulge in defendant's pocket was a weapon. Nor did he identify any specific fact upon which he could have based a reasonable suspicion that the bulge was a weapon. Instead, Prim's testimony was that he was "unaware if [defendant] had a weapon or not" and could not "exclude the possibility" that the bulge was a weapon. Prim did not even claim that he had a "hunch" that the bulge was weapon.

My colleagues' repeated claims that "Officer Prim suspected that the bulge might be a weapon" are inaccurate and misleading. Prim *never* testified that he "suspected that the bulge might be a weapon." Yet my colleagues make this inaccurate claim repeatedly. On page 2 of the majority opinion, my colleagues say: "The officer conducted a pat search because he suspected that the bulge might be a weapon . . . ." On page 8 of the majority opinion, my colleagues say: "The gist of this testimony was that Officer Prim suspected that the bulge might be a weapon." Also on page 8 of the majority opinion, my colleagues say: "The essence of this testimony was that Officer Prim suspected that the bulge might be a weapon." On page 9 of the majority opinion, my colleagues say: "Officer Prim suspected that the bulges might be a weapon."

Prim did *not* testify that he "suspected" that the bulge might be a weapon, and this was neither the "gist" nor the "essence" of his testimony. Instead, he testified that he "couldn't quite determine" the precise nature of the cell-phone-shaped object in defendant's pocket and could not "exclude the possibility" that the object was a weapon. Prim *never* articulated a suspicion that the bulge might be a weapon but only a lack of certainty as to the precise nature of the cell-phone-shaped object. By basing

their conclusion that the pat search was justified on this unsupported inference, my colleagues undermine their analysis.

My colleagues' reliance on *United States v. Chaney* (1st Cir. 2009) 584 F.3d 20 (*Chaney*) is misplaced because *Chaney* is readily distinguishable. Chaney was the passenger in a vehicle that was stopped for an unlit headlamp. (*Chaney*, at p. 22.) When the officer asked Chaney to identify himself, Chaney provided a false name, was fidgety and nervous, and avoided eye contact. The officer noticed a "bulge" that was "about the size of a fist" in the front pocket of Chaney's jeans. (*Chaney*, at pp. 22-23.) The officer "testified that in his experience, people sometimes give a false name when they are carrying a concealed weapon without the required permit." (*Chaney*, at p. 26.) The officer was "concerned that the bulge might be a weapon," and he asked Chaney what was in that pocket. Chaney did not respond and became more nervous. (*Chaney*, at p. 23.) When the officer repeated the question, Chaney "shifted his weight," reached into his rear pocket, produced a wad of napkins, and told the officer that there was nothing in his front pocket. The officer noticed that when Chaney moved the "bulge . . . remained rigid." The officer again directed Chaney's attention to the front pocket containing the bulge, and Chaney "shoved" the napkins into the pocket, pushing the "bulge" lower. (*Ibid.*) It was only at this point that the officer decided to conduct a pat search, which led to the discovery of a weapon in Chaney's pocket. (*Chaney*, at p. 24.) The First Circuit Court of Appeals rejected Chaney's claim that the pat search was unjustified. (*Chaney*, at p. 27.)

The facts of this case are not remotely similar to those in *Chaney*. The First Circuit upheld the pat search because "Chaney's evasiveness and failure to identify what was in his pocket, coupled with the size and rigid nature of the object, gave Officer Brown a specific articulable basis for suspecting that Chaney might be armed, thereby justifying a pat-down search." (*Chaney*, *supra*, 584 F.3d at p. 27.) The specific articulable facts present in *Chaney* are precisely what was lacking in this case.

The officer in *Chaney*, unlike Prim, identified multiple specific and articulable facts suggesting that the bulge in Chaney's pocket was a weapon. Chaney had provided a false name, which the officer knew to be associated with illegal weapon possession, and was evasive in response to inquiries about the contents of the pocket. "[C]oupled with the size and rigid nature of the object" in Chaney's pocket, these facts supported a reasonable suspicion that the object was a weapon. None of those facts was present here. Defendant was polite, cooperative, and responsive to Prim's inquiries. Nothing about the cell-phone-shaped "bulge" in defendant's pocket suggested that it was anything other than a cell phone, and nothing about defendant's conduct indicated that he was carrying a weapon. I find no support for my colleagues' position in *Chaney*.

My colleagues maintain that *People v. Dickey* (1994) 21 Cal.App.4th 952 (*Dickey*) is "distinguishable" because the deputy in *Dickey* did not provide any specific and articulable facts indicating that the defendant was armed. (Maj. opn., *ante*, at p. 9.) In *Dickey*, "[t]he deputy testified that he performed the patdown search for 'officer safety' and because appellant 'potentially may have been armed.'" (*Dickey*, at p. 956.) The sole difference between *Dickey* and this case is Prim's observation of the cell-phone-shaped bulge in defendant's pocket. However, nothing about that bulge suggested that defendant was armed, rather than merely in possession of a cell phone. The deputy's testimony in *Dickey* was indistinguishable from Prim's testimony that he could not "exclude the possibility" that defendant was armed. I agree with the *Dickey* court that "[w]ithout 'specific and articulable' facts which show that the suspect may be armed and dangerous, these conclusions add nothing. In every encounter with a citizen by the police, the citizen may potentially be armed." (*Dickey*, at p. 956.)

When an officer cannot articulate any fact that supports something more than a mere possibility that a citizen is armed, the officer is not entitled to conduct a pat search. Here, the pat search was unjustified, and I would hold that the superior court erred in denying defendant's suppression motion.

7

_____
Mihara, J.

<u>People v. Sacrite</u>
H044419

Trial Court:                        Santa Clara County Superior Court
                                    Superior Court No.:  C1484687


Trial Judge:                        Hon. Ron M. Del Pozzo


Attorney for Appellant:             Laurel Simmons,
Irvin Sacrite                       under appointment by the Court of Appeal


Attorneys for Respondent:           Xavier Becerra,
The People                          Attorney General
                                    Gerald A. Engler,
                                    Chief Assistant Attorney General
                                    Jeffrey M. Laurence,
                                    Senior Assistant Attorney General
                                    Catherine A. Rivlin,
                                    Supervising Deputy Attorney General
                                    Allan Yannow,
                                    Deputy Attorney General

*People v. Sacrite*
**H044419**