**UNITED STATES of America,**
**Appellant,**

v.

**Victor DEL TORO, Defendant-Appellee.**

**No. 788, Docket 72–1180.**

United States Court of Appeals,
Second Circuit.

Argued May 18, 1972.

Decided July 25, 1972.

Moore, Circuit Judge, dissented and filed an opinion.

James P. Tierney, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. S. D. N. Y., John W. Nields, Jr., Asst. U. S. Atty., of counsel), for appellant.

William I. Cohen, New York City, (Louis R. Rosenthal, Brooklyn, N.Y., of counsel), for defendant-appellee.

Before MOORE, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This appeal is taken from an order entered in the United States District Court for the Southern District of New York (Morris E. Lasker, Judge) granting defendant-appellee's motion[1] to suppress cocaine seized from his person by the New York Joint Narcotics Task Force[2] allegedly in violation of the

1. Made pursuant to Fed.R.Crim.P. 41(e).

2. Appellee had been indicted on one count of the possession of cocaine (21 U.S.C. § 884).

Fourth Amendment. The district court ruled that a limited search of appellee for weapons had not been warranted, and was therefore not obliged to reach the question whether the seizure of the cocaine after the pat-down was reasonable. We cannot agree that a cursory "frisk" for weapons was unjustified under the circumstances of this case, but hold that as a matter of law a ten dollar bill folded to a size of 2″ x ¾″ and containing 2.2 grams of cocaine felt in the handkerchief pocket of appellee's suit coat could not reasonably have aroused the suspicion of a weapon; we therefore affirm the suppression order but on the ground that a permissible pat-down search evolved into an illegal search for evidence.

On May 11, 1971 a warrant was obtained for the arrest of one Rivera, a known narcotics dealer. He was located at 11 p. m. leaving a bar in the company of appellee, owner of the bar and Rivera's employer, who was unknown to the agents. As the two men, who were kept under surveillance, left another bar at 1:10 a. m. the next morning, the eight shadowing agents closed in with drawn revolvers and ordered them out of appellee's car. Rivera was arrested, searched, and cocaine (but no weapon) discovered on his person. Then on the other side of the car, covered by his fellow agents, Officer LaBriola frisked appellee for weapons. Officer LaBriola explained at the hearing below that drug dealers were usually armed and often accompanied by armed bodyguards.[3] When he felt a small, creased object in appellee's handkerchief pocket, he claimed he had

feared the presence of a knife or razor blade; upon removal it turned out to be a folded ten dollar bill containing a small amount of cocaine.

■■ A police officer may forcibly stop a suspect, and promptly conduct a superficial pat-down for weapons if in the light of his experience he reasonably perceives the threat of harm in a given factual situation. Terry v. Ohio, 392 U. S. 1, 26, 33, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Adams v. Williams, 407 U. S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Cf. LaFave, "Street Encounters" and the Constitution: Terry, Sibron, Peters and Beyond, 67 Mich.L.Rev. 40, 87 (1968). Officer LaBriola confronted appellee late at night on a street in the Bronx as the sole companion of a known narcotics dealer; unidentified, he had accompanied the dealer throughout the period of surveillance; viewing this factual situation in the light of his experience that narcotics dealers often employed armed bodyguards, it would have been less than prudent for him to do other than conduct a limited pat-down for weapons. Granted that appellee was not uncooperative, and that the police were present in force, it would nevertheless be unreasonable to expect them to expose themselves to a violent escape attempt,[4] however futile, when the limited intrusion of a pat-down would promptly defuse what officers experienced in narcotics enforcement perceived as a potentially explosive situation. See United States v. Berryhill, 445 F.2d 1189, 1193 (9th Cir. 1971); United States v. Gonzalez, 319 F.Supp. 563, 564–565 (D.Conn.1970).[5] We have no

---

3. The agent's belief was based on fifteen years' experience as a police officer, the last seven of which he had spent in narcotics enforcement. He stated that about 60% of the 600 to 700 narcotics arrests in which he had participated had involved weapons. A government motion to reopen the suppression hearing to buttress the agent's testimony with statistical evidence was denied by the district court on the ground that such proof would not affect its decision. We do not regard this statistical testimony or additional statistical evidence of the probability that nar-

cotics dealers will be protected by armed bodyguards as necessary to our decision.

4. If advantage could be gained over a single officer by the unexpected production of a weapon, for example, the others might well be forced to bargain for his release.

5. Given our holding that a limited search for weapons was warranted under the rationale of *Terry*, we need not consider whether, as the government urges, it was also justifiable as a search incident to the lawful arrest of Rivera on the theory that

doubt that society's interest in minimizing the risk to police officers under the circumstances of this case outweighs the threat to the privacy of the individual. *See, Terry, supra,* 392 U.S. at 20–21, 88 S.Ct. 1868.

■■ We would not of course countenance a full-blown search for evidence as distinguished from seeking a weapon under the same circumstances. *See* Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Police action justified at its inception may quickly exceed the reach of that justification:

> The sole justification of . . . [a limited search for weapons] is the protection of the police officer and others nearby, and it therefore must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.
> Terry v. Ohio, 392 U.S. at 29, 88 S. Ct. at 1884.

*See Sibron, supra,* 392 U.S. at 65, 88 S. Ct. 1889. The fruits of an intrusion which exceeded its legitimate scope are inadmissible in a subsequent criminal proceeding. Terry v. Ohio, *supra,* 392 U.S. at 29, 88 S.Ct. 1868. Our reading of the record at the suppression hearing has persuaded us that the limited search for weapons, justified by the circumstances of this case, did degenerate into an unrelated and therefore unreasonable search for evidence.

Officer LaBriola was, as we have noted, experienced in narcotics enforcement; he knew that addicts often carried cocaine in a folded dollar bill; he had discovered cocaine in folded currency on some fifty prior occasions; he

knew cocaine had just been discovered on Rivera. It strains credulity to suppose that when Officer LaBriola pressed his hand to appellee's handkerchief pocket, and felt a small and flexible object, he suspected anything other than the possible presence of cocaine in precisely the container his search would shortly produce.

True, it could have been a razor blade; something of the size and flexibility of a razor blade could be concealed virtually anywhere,[6] and accordingly provide the pretext for any search, however thorough.[7] It is significant that here, for example, Officer LaBriola's pat-down revealed an object which he supposed to be appellee's wallet. It could easily have contained a razor blade; yet it was not seized. Nor we think would the folded ten dollar bill have been seized had not Officer LaBriola in all likelihood suspected what he had found, not a weapon, but cocaine.

It may be argued that this gave the officer probable cause to arrest and that the search was incident to arrest. There are two difficulties with this, however. First, arrest was not made until after the search, and the opening of the packet, had disclosed the contraband. Second, a too generous view of the evidence as providing probable cause for arrest rather than mere suspicion would encourage indiscriminate searches unrelated to the need for protection of the officers which need for protection furnishes the foundation of the warrantless frisk or pat-down rule. It would make illusory the Fourth Amendment protection against unreasonable searches and seizures.

The seizure, not reasonably related to the circumstances which provoked the

---

appellee was part of the "area from within which he [the arrestee] might gain possession of a weapon or destructible evidence." Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969).

6. To take an extreme example, a razor blade could readily be sewn into clothing, and so support a purported limited search

for weapons which included shredding a suspect's clothing or dismantling his shoes.

7. *See* United States v. Gonzalez, 319 F. Supp. 563, 565 (D.Conn.1970) ; People v. Collins, 1 Cal.3d 658, 662, 83 Cal.Rptr. 179, 182, 463 P.2d 403, 406 (1970) ; Cook, The Art of Frisking, 40 Ford.L.Rev. 789, 796–98 (1972).

protective search for weapons, and not incident to an arrest, violated appellee's Fourth Amendment rights; accordingly the evidence obtained was properly suppressed.

Affirmed.

MOORE, Circuit Judge (dissenting):

Here is another illustration, in my opinion, of an appellate court, writing in the comparative safety of its chambers, telling an experienced Federal Narcotics Agent what his subjective reaction should have been when the Agent, during a legitimate "frisk", discovered an object (contents then unknown) in the pocket of a companion of a just-arrested drug dealer. It was the Agent's concern as to the object and *at that time*, not months later on a suppression hearing, that should be the relevant focus of our inquiry. It was the Agent's throat which might have been cut by a razor, knife or sharp object—not an appellate judge's.

Only by wholly ignoring the Agent's testimony can a court hold that the object "could not reasonably have aroused the suspicion of a weapon." There is no need for speculation; the Agent gave an undisputed account of his reaction.[1]

Q. At the time you felt the object in Mr. Del Toro's pocket, what did you believe that the object could have been?

A. I did not know what it was.

\*　\*　\*　\*　\*　\*

The Court: We are asking you what you thought at the time, not what your present thinking is.

\*　\*　\*　\*　\*　\*

The Witness [La Briola]: Yes, I am saying what I thought at the time. When I first felt the object, through my mind went a knife or possibly a razor blade.

Q. In your experience as a New York City Policeman, have you had experience to remove objects such as knives or razor blades?

\*　\*　\*　\*　\*　\*

A. Yes, I have.

Q. And during the past seven years, on approximately how many occasions have you found personally a knife or a razor blade of approximately that size on a suspect?

\*　\*　\*　\*　\*　\*

A. Maybe 60 per cent of the time.

\*　\*　\*　\*　\*　\*

The Witness: Maybe four hundred times, three to four hundred times possibly.[2]

As it turned out, the object, when removed from the suspect's pocket, was a folded $10 bill in which were 2.2 grams of cocaine. On some 50 previous occasions, the Agent had seen folded United States currency which contained cocaine. On some 300–400 occasions, knives or razor blades had been found. Therefore, the odds were 300–400 to 50 that the object might well have been dangerous. To the majority it "strains credulity" that the Agent could have "suspected anything other than the possible presence of cocaine." They hold that "as a matter of law a ten dollar bill folded to a size of 2″ x ¾″ and containing 2.2 grams of cocaine" could not reasonably have aroused suspicion of a weapon. But it was the Agent's experience and his life which count—not the court's present belief of what the Agent should have thought at the time. If the narcotics traffic is to be stopped or diminished, the Agents should be protected, not hampered. And in the final analysis, the odds in favor of the object containing a razor blade or knife were overwhelming. Therefore, in my opinion, the Agent's action in removing the ob-

1. In his affidavit submitted in support of a motion to reopen the suppression hearing, Jame P. Tierney, Assistant United States Attorney offered *inter alia*, to present Sergeant Louis Amendola of the New York City Police Department, Crime Analysis Section, who would testify that of some 264,814 total arrests in New York

City in 1970, some 30,599 cutting instruments (knives, razors) were seized, and that during the first 10 months of 1971 there were some 210,336 arrests in which some 34,829 cutting instruments were seized.

2. Transcript of Hearing at 35–38.

ject and inspecting its contents can only be characterized as "reasonable" under the circumstances.

The law boasts that it is based upon Reason. In this case, Reason motivated the Agent's acts. It should sustain him now.

I would reverse the order suppressing the seized cocaine.