Luther Vernon FRANCIS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–384.

Court of Criminal Appeals of Oklahoma.

Sept. 19, 1978.

Frank R. Courbois, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Givens L. Adams, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Luther Vernon Francis, hereinafter referred to as the defendant, was tried in the District Court, Oklahoma County, Case No. CRF–75–4012, with Possession of Heroin With Intent to Distribute, Second and Subsequent offense, in violation of 63 O.S.Supp.1977, § 2–401. The case was tried to a jury and a guilty verdict was returned. Punishment was assessed at ten (10) years' imprisonment. From judgment and sentence, defendant has perfected a timely appeal to this Court.

State's evidence showed that on October 7, 1975, agents for the Oklahoma Bureau of Narcotics and Dangerous Drugs, and members of the Midwest City Police Department, were conducting a search of an apartment in Midwest City, pursuant to a warrant. During the course of the search, defendant came to the apartment, which was not his, and knocked upon the door. The police admitted him and then searched him, discovering in his pocket what was later described to be one-half ounce of 16% pure heroin, wrapped in a plastic bag. Defendant was then arrested.

Defendant rested without presenting any evidence.

In support of the second and subsequent charge the State showed that the defendant had been previously convicted of Sale of Heroin.

Defendant's sole contention on appeal is that the trial court erroneously overruled his motion to suppress the heroin, on the grounds that it was obtained through an illegal search.

Defendant was searched without a warrant and thus the State must show that the search came within one of the few narrowly delineated exceptions to the

Fourth Amendments requirement for a warrant. The two officers who greeted the defendant at the door of the apartment, Detective Hill and Agent Birdsong, both testified that prior to searching the defendant, he had committed no offense in their presence nor did they have probable cause to believe that he had done so. The search thus cannot be justified as incident to a lawful arrest.

No facts were advanced by the officers which would have given them probable cause to search, which in combination with "exigent circumstances," could excuse a warrantless intrusion. Nor was there any evidence that defendant consented to the search.

In support of the validity of the search, the State attempts to show that when the defendant came to the door of the apartment the circumstances were such that the officers were justified in frisking defendant for offensive weapons, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that when the frisking officer felt a "bulge" in defendant's pocket, which "bulge" was of such nature that it could have been a weapon, the officer was thereupon justified in seizing the object causing the bulge. The object of course is the aforementioned plastic bag containing about one-half ounce of powder.

The trial court apparently agreed with the aforementioned contentions of the State and overruled defendant's motion to suppress. Defendant's first assignment of error asserts under *Terry v. Ohio*, supra, and cases following, the officers were not justified in frisking the defendant.

Defendant next contends that even if the officers were justified in conducting a frisk, or "pat-down," the extent of such search was exceeded when the officers intruded into defendant's pocket and removed the heroin, and said package of heroin could have in no manner resembled any kind of weapon to the officer conducting the pat-down.

In order to properly consider these contentions it is necessary to explore the circumstances surrounding the search of the defendant is more depth. Detective Smith stated that he, Birdsong, two other detectives and several scout car officers had been searching the apartment for about an hour before the defendant knocked on the door. Smith stated that both he and Birdsong approached the door, that Birdsong opened it, and that they observed the defendant, who was alone. The record reflects the following during cross-examination:

"Q. All right. And now, what happened when Mr. Birdsong opened the door and the two of you were standing there and here's this young man?

"A. He stepped into the apartment there about one step, and he looked like he recognized Agent Birdsong. He had his hands in his pockets. He tried to make movements, which we didn't know what he had in his pockets.

"Q. What kind of movements did he make?

"A. He made movements like he was going to turn and run or something.

"Q. Like he was going to turn and run?

"A. Yes, sir.

"Q. Were those the only kind of movements that he made?

"A. Yes, sir.

"Q. You surmised from the movements that he made with his hands in his pockets that he was going to turn and run?

"A. Possibly that.

"Q. All right. And so what did you do?

"A. We grabbed a hold of him.

"Q. Why did you grab a hold of him?

"A. Because we didn't know but what he had a weapon inside his pockets.

"Q. You didn't know if he had a weapon or not?

"A. (No response)

"Q. Did you surmise that he might have a weapon? Might use a weapon as he was turning to run?

"A. There was no way of knowing if he was going to turn and run or whether he

was stepping back and was going to pull a weapon and use it." [Tr. 42–43].

Thereafter the defendant was placed against a refrigerator and Officer Smith patted him down, discovering a bulge in his right front pants pocket.

Detective Smith testified to these same events at preliminary hearing which evidence the trial court considered in ruling on the defendant's motion to suppress. At the preliminary Detective Smith failed to indicate that the defendant had his hands in his pockets when he made his "quick movement." At trial, defense counsel impeached the witness with regard to this, using the preliminary transcript.

Agent Birdsong testified that he arrived at the apartment at about 5 minutes after the other officers arrived, and that the defendant knocked on the door 2 minutes thereafter. Birdsong stated that he alone opened the door, and that two persons were standing there, one of whom was the defendant. Birdsong invited defendant in and defendant, who had his hands in his pockets, stepped across the threshold, glanced up, saw Birdsong, and then "turned and started to run," at which time Birdsong grabbed defendant. Birdsong also stated, almost as an afterthought, that prior to grabbing the defendant he requested the defendant to take his hands from his pockets, and defendant refused. Defendant was placed up against a refrigerator after a brief struggle and Birdsong forcibly removed defendant's hands from his pockets, while Officer Smith patted him down. Birdsong did not know if Smith found the heroin in defendant's pants or coat pocket.

Agent Birdsong also testified that several days prior to trial he testified in a hearing on defendant's motion to suppress. Further, that during the course of that hearing or subsequent thereto, he contacted Detective Smith by telephone in order to discuss who had removed the heroin from the defendant's pocket. Birdsong stated that he did this because the events had occurred over a year prior to the hearing and he did not know who had removed the heroin.*

The first question that must be answered is whether the officers were justified in patting down the defendant in the first place. The standard for such an intrusion is contained in *Terry v. Ohio*, supra, and *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) and it is, like all Fourth Amendment standards, one of reasonableness.

> "Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. * * * And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. . . ." *Terry v. Ohio*, 392 U.S. at 27, 88 S.Ct. at 1883, citations omitted.

In *Sibron v. New York*, supra, it states: "The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that

---

* Detective Smith was also cross-examined with regard to this telephone call.

the individual was armed and dangerous. *Terry v. Ohio*, supra." *Sibron v. New York*, 392 U.S. at 64, 88 S.Ct. at 1903.

■ We think that in the present case, the officers were justified in frisking the defendant. The evidence showed that upon being admitted into an apartment which was being searched, the defendant made furtive motion and refused to take his hands out of his pocket when requested to do so by the officers. Although there were conflicts in the testimony, that much was uncontroverted and unimpeached.

■ However, we are unconvinced that the seizure of the bag of heroin from defendant's right front pants pocket was justified. The scope of a "Terry pat-down" is and must be strictly limited to a search for offensive weapons. When in course of a frisk the officer feels an object, he is not justified in seizing it unless it reasonably resembles an offensive weapon. *Ricci v. State*, Okl.Cr., 506 P.2d 601 (1973). As is amply stated by the Supreme Court of California:

"Feeling a soft object in a suspect's pocket during a pat-down, absent unusual circumstances, does not warrant an officer's intrusion into a suspect's pocket to retrieve the object. A pat-down must 'be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.' (*Terry v. Ohio*, supra, 392 U.S. at p. 29, 88 S.Ct. at p. 1884). The obvious purpose of holding that officers cannot go beyond exploration of the surfaces of a suspect's clothing without being 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that [additional] intrusion' is to ensure that the scope of such a search cannot be exceeded at the mere discretion of an officer, but only upon discovery of tactile evidence particularly tending to corroborate suspicion that the suspect is armed. (Id., at pp.

21–22, 88 S.Ct. at p. 1880.) To permit officers to exceed the scope of a lawful pat-down whenever they feel a soft object by relying upon mere speculation that the object might be a razor blade concealed in a handkerchief, a 'sap,' or any other atypical weapon would be to hold that possession of any object, including a wallet, invites a plenary search of an individual's person. Such a holding would render meaningless *Terry's* requirement that pat-downs be limited in scope absent articulable grounds for an additional intrusion." *People v. Collins*, 1 Cal.3d 658, 83 Cal.Rptr. 179, 463 P.2d 403 at 406 (1970).

■ Here the bulge felt by the Detective Smith in the defendant's pants pocket was described as being only slightly larger than a human forefinger. When asked whether the object was hard or soft, Detective Smith replied that it was "medium." Further when asked if he really believed that the bulge was an offensive weapon, Detective Smith replied "it possibly could have been a knife, yes." The State urges that we take this conclusion at face value rather than letting "hindsight be the judge of the officer's decision to remove the questionable object." However the argument proves too much. Whenever a search without a warrant is made, and the issue is raised at trial, hindsight must necessarily be the judge. As is stated in *Terry v. Ohio*, 392 U.S. at 21, 22, 88 S.Ct. at 1880:

"The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a Judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: Would the facts available to the officer at the moment of the seizure of the search 'warrant a man of reasonable caution in

the belief' that the action taken was appropriate? * * * Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused sanction." [Citations omitted]

Detective Smith's conclusion that the object could have been a knife flies in the face of his description of the object as being neither hard nor soft, but "medium." Without quibbling over the relative meanings of these words it is obvious that since the object was not hard, it could not have been a knife. A small plastic bag containing no more than one-half ounce of powder, no matter how tightly rolled, would still feel pliable to inquisitive fingers. Further, since the bag was found in the defendant's front trouser pocket, it cannot be claimed that there were so many layers of cloth between the object and the searcher's fingers that the object's apparent condition of "medium softness" was due to the layers of cloth rather than to the nature of the object itself. A simple squeeze of the "bulge" would have revealed that the object was not a knife.

We thus hold that although the frisk was proper in its inception, it revealed the presence of no object which a reasonable man could have concluded was a weapon. The judgment and sentence is therefore REVERSED.

BUSSEY, P. J., concurs in results.

CORNISH, J., concurs.