Hurist JOUBERT, Appellant,

v.

STATE of Alaska, Appellee.

No. A–6540.

Court of Appeals of Alaska.

April 30, 1999.

---

Maria Bahr, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

Hurist Joubert appeals his conviction for third-degree misconduct involving a con-trolled substance.[1] He maintains that the police illegally seized cocaine during a pat-down search. We conclude that the seizure of the cocaine was impermissible and reverse.

*Facts and proceedings*

In October of 1995, Joubert was on parole supervision for a 1989 felony case. One of Joubert's parole conditions required him to inform his parole officer if he purchased or regularly drove a vehicle. Another condition required him to consent to a search requested by a parole officer.

On October 3, 1995, a probation officer told Joubert's parole officer, Stanley Shoop, that he had seen Joubert driving a red Cadillac and that the Cadillac had been reported stolen to the Anchorage Police Department. Shoop contacted APD and confirmed that the Cadillac in question was listed as a stolen car.

On the evening of October 4, 1995, Shoop drove to Joubert's apartment. The red Cadillac was parked outside. After reconfirming with APD dispatch that the car was listed as a stolen vehicle, Shoop requested assistance from APD. While Shoop was waiting for police to arrive, Joubert left his apartment, got into the Cadillac and started to drive away. Shoop blocked Joubert's departure with his own car. Shoop ordered Joubert out of the Cadillac, handcuffed him, conducted a pat-down search for weapons, and placed Joubert in the caged back seat of Shoop's car. Shoop told Joubert that he was not under arrest, but that Shoop was holding him pending a police investigation concerning the allegedly stolen car.

Joubert told Shoop he was the registered owner of the Cadillac and that title to the car was upstairs in his apartment. Joubert, however, had not reported ownership of the Cadillac to his parole officer. Joubert asked Shoop to remove the handcuffs so he could prove ownership, but Shoop refused. .

Anchorage Police Officers Philip Kantor and Mitch Kehr arrived on the scene. Shoop told the officers that he had searched and handcuffed Joubert and that Joubert claimed that the title to the Cadillac was in his apart-

1.  AS 11.71.030(a)(1).

ment. One officer radioed APD dispatch and received confirmation that the Cadillac was reported stolen.

Officer Kantor removed Joubert from Shoop's car and replaced Shoop's handcuffs with his own set, cuffing Joubert's hands behind his back. Officer Kantor conducted his own pat-down search of Joubert. Kantor felt something small and hard in Joubert's right front pants pocket area. Officer Kantor could not identify the item but suspected it could be a small weapon. Kantor lifted Joubert's sweatshirt to look in the right front pocket area. He saw what appeared to be a rock of crack cocaine. protruding from the right front watch pocket of Joubert's jeans. Officer Kantor seized that first rock. He searched in the same pocket and found and seized a second rock of crack cocaine. Officer Kantor also found a velvet bag in a pocket of Joubert's sweatshirt and removed it. A search of that bag revealed more rocks of cocaine. The police arrested Joubert for cocaine possession and theft of the Cadillac.

Despite reports that the Cadillac was stolen, the car was legally registered to Joubert. The State indicted Joubert for third-degree misconduct involving a controlled substance. Joubert moved to suppress the evidence found by Officer Kantor following his pat-down search.

Superior Court Judge Milton M. Souter held an evidentiary hearing. At the evidentiary hearing on Joubert's motion, Officer Kantor testified as follows:

Q And when you got toward the area of his right pocket, you felt hard objects?

A Yes.

Q They were small?

A Yes.

Q Did you move your hands around the small objects to determine their size?

A No.

Q Did you place your hand on them and immediately determined they were small?

A I came up on the right side of his leg and when I came to the right top front pocket, I just felt something hard.

Q "Something hard." Did it feel like a gun?

A No.

Q Did it feel like a knife?

A Don't know. Razor blade, don't know. Something small, don't know.

Q Could you describe—it was small, was it round?

A Couldn't tell.

Q Was it long? Did it have a length dimension?

A Well, it had a length dimension but it was small. All I can say is it was just small and hard.

Q And it protruded?

A It protruded enough for me to feel it.

Q And you were able to determine that by placing your hand over the object?

A On the outside of the pocket, yes.

Q On the outside of the pocket.

A Yes.

Q Did you move your hand at all?

A Probably. I don't recall.

Q And did you feel that this object was an explosive in any way?

A I didn't know—I don't know. Probably not, but you never know.

Q You were concerned essentially that it was a razor blade?

A My concern essentially was that I didn't know what it was.

Q In your experience, had you encountered razor blades in that area of ...

A Yes, I have.

Q Had you ever encountered anything of that dimension that was a weapon?

A Small little pocket knifes. Probably not that small.

Q So this felt smaller than a pocket knife?

A Than an average size—than a normal sized pocket knife that people carry, yes.

Q And Mr. Joubert's hands are behind him?

A Yes.

Q Would he have been able to reach into that pocket?

A Probably not, but I've had people do some limber movements while they were in cuffs and be able to get to their front pockets in the past.

Judge Souter rejected Officer Kantor's testimony that Kantor suspected a weapon when he felt what turned out to be the first rock of crack cocaine. Nevertheless, Judge Souter concluded that the search was justified as a parole search at the request of Parole Officer Shoop and denied Joubert's motion to suppress.

At trial, the evidence established that Officer Kantor did not act at the request or at the direction of Shoop. In light of this evidence, Joubert moved Judge Souter to reconsider his ruling that the search of Joubert was justified as a parole search. Judge Souter reconsidered his ruling. As part of his reconsideration, Judge Souter examined the rocks of cocaine admitted into evidence at trial. Again, Judge Souter declined to suppress the evidence. As part of his decision, Judge Souter made the following findings:

[A]t the time of the suppression hearing, relying on what I saw and heard but without the opportunity to feel the evidence which is a big difference, I ruled that Officer Kantor's stated suspicion that these two rocks of cocaine might be a small knife or razor was ludicrous. That's wrong. Considering that the defendant was wearing jeans[,] that these two so-called rocks of cocaine were in his watch pocket and that they were also covered by the thickness of his sweatshirt, there is no doubt in my mind at this point after having myself felt these two rocks of cocaine, physically, for the first time, there's no doubt in my mind that Officer Kantor's suspicion that this might be a small knife or a razor blade was reasonable. That's a reasonable suspicion based on articulable facts.

Joubert was convicted as charged and sentenced to a presumptive 6–year term.

### Discussion

■ We assume for purposes of deciding this case that Officer Kantor was permitted to frisk Joubert for weapons. Joubert was handcuffed with his hands behind his back. If Joubert had been able to reach and retrieve whatever was in his front pocket, Joubert still faced superior police power and still had his hands cuffed behind his back. Officer Kantor testified that the small, hard object was not a gun. He did not testify that he actually suspected that the small, hard object was a weapon. He indicated that he did not know what the small, hard object was. Furthermore, nothing in the record suggests that there were any other potentially hostile threats to the safety of the officers in the vicinity that would have deflected their attention from Joubert. We conclude that in the circumstances of this case, the limited search for weapons authorized by *Terry v. Ohio* [2] and *Coleman v. State* [3] did not justify Officer Kantor's inspection of Joubert's pocket area after he felt something small and hard.

This conclusion is favored by Professor LaFave in his treatise on Fourth Amendment search and seizure law.[4] LaFave credits the decision of the California Supreme Court in *People v. Collins* [5] with advancing the sensible consideration of what type of object could be employed as a weapon in the setting of the case. As Professor LaFave notes: "certain items which might be employed as weapons in a surprise attack from the rear would not be effective during the face-to-face encounter of a field interrogation." [6] Therefore, we conclude that Officer Kantor's additional intrusion which discovered the rocks of cocaine in Joubert's pocket was not authorized by the limited search for weapons allowed during an investigative stop.

■ Next, we assume that the police officers were entitled to arrest Joubert for theft of the car. A search that precedes an arrest can be justified as incident to arrest as long as the fruits of the search are not required to establish probable cause for the search.[7]

---

**2.** 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**3.** 553 P.2d 40, 46 (Alaska 1976).

**4.** *See* 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.5(c), at 276–80 (3d ed.1996).

**5.** 1 Cal.3d 658, 83 Cal.Rptr. 179, 463 P.2d 403 (1970).

**6.** LaFave, *supra* note 4, at 278.

**7.** *See Rawlings v. Kentucky*, 448 U.S. 98, 110–11, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

Here, Joubert's arrest for theft of the car and possession of cocaine followed Officer Kantor's discovery of the cocaine. But we ruled above that Officer Kantor's discovery of the cocaine following the pat-down search was not justified, so that evidence could not be used to establish probable cause for Joubert's arrest for cocaine possession. Therefore, Officer Kantor was not authorized to search Joubert for evidence of cocaine possession.

Federal law permits a police officer to search all of the person and any possessions found upon the person incident to arrest.[8] But Alaska law is more restrictive. In *Zehrung v. State,* the Supreme Court of Alaska held that a police officer may search a person incident to arrest only for weapons or for evidence of the crime for which the police arrested the person.[9] Here, Officer Kantor testified that he was not searching Joubert for evidence of the theft of the Cadillac. Furthermore, the State has not argued that there could have been evidence on Joubert's person that would have been evidence of a stolen vehicle. Therefore, we must determine under Alaska law whether the scope of Officer Kantor's search that discovered the cocaine exceeded the permissible scope of a search for weapons incident to arrest.

We recognize that a search for weapons incident to arrest may be more intrusive than a pat-down search for weapons in an investigative stop. Following an arrest, a police officer and a defendant may be in contact for an extended period compared with the limited face-to-face contact during an investigatory stop. Still, we applied *Zehrung* in *Jackson v. State* to hold that a search for weapons incident to an arrest must be limited to an examination of articles that could hold a weapon of normal size unless a police officer has an articulable basis for suspicion that the arrestee is carrying an unusually small weapon.[10]

■ The record here contains Officer Kantor's uncertainty about what may have been in Joubert's pocket: "Don't know. Razor blade, I don't know. Something small, don't know.... It could have been a small pocket knife. It could have been a typical razor or the sheathing that goes on top of a razor." But the State did not present evidence that the police had an articulable suspicion that Joubert was armed with an atypical weapon as discussed in *Jackson.*

We conclude that the evidence in this record does not support a conclusion that the State presented an articulable suspicion that Joubert was armed with an atypical weapon. To the extent that Judge Souter's findings during trial contradict our conclusion, we conclude that those findings are clearly erroneous. Because the State did not present sufficient evidence that Officer Kantor had an articulable suspicion that Joubert had an atypical weapon in his pocket, the superior court's order denying the motion to suppress must be reversed.

## Conclusion

The judgment of the superior court is REVERSED.

MANNHEIMER, Judge, concurring.

I join in the decision to reverse Joubert's conviction.

All of the charges against Joubert stem from the fact that a police officer searched Joubert's clothing after feeling two pea-sized rocks of cocaine in the watch pocket of Joubert's jeans. The resolution of this case thus hinges on the answer to the following question: When a police officer conducts a pat-down search for weapons and feels a small, hard object in the suspect's clothing—an object too small to be a normal weapon—may the officer lawfully remove the object and inspect it?

Based on this court's decision in *Jackson v. State*[1] and the California Supreme Court's decision in *People v. Collins*[2], I conclude that such an intrusion is permitted only under certain circumstances: The officer may re-

---

**8.** *See United States v. Robinson,* 414 U.S. 218, 235–36 (1973).

**9.** *See* 569 P.2d 189, 199–200 (Alaska 1977).

**10.** *See* 791 P.2d 1023, 1028 (Alaska App.1990).

**1.** 791 P.2d 1023 (Alaska App.1990).

**2.** 1 Cal.3d 658, 83 Cal.Rptr. 179, 463 P.2d 403 (1970).

move and inspect the small object only if the officer has articulable reason to suspect that the person being searched is armed with an atypical weapon, a weapon that would feel like the small object the officer has felt during the pat-down.

In Joubert's case, the State failed to offer specific and articulable facts to support a reasonable belief that Joubert was carrying an atypically small weapon. I therefore conclude that the superior court should have granted Joubert's suppression motion.

### The facts of the case, and Judge Souter's ruling

As described in Judge Stewart's opinion, Joubert's parole officer detained Joubert on suspicion of driving a stolen vehicle. The police arrived a few minutes later, and they assumed custody of Joubert. One of these officers, Officer Kantor, patted down Joubert's outer clothing, looking for weapons. Through Joubert's sweatshirt, Kantor felt two solid, pea-sized objects in the watch pocket of Joubert's jeans. Kantor lifted Joubert's sweatshirt, looked at the pocket, and saw what appeared to be a rock of cocaine. He seized this object, and he then conducted a more intensive search of Joubert's person, discovering other drugs in the process.

When Officer Kantor was questioned about this search, he offered lukewarm reasons for his initial intrusion into Joubert's clothing:

KANTOR: [W]hen I came up to [Joubert's] right top front pocket, I just felt something hard.

DEFENSE ATTORNEY: "Something hard." Did it feel like a gun?

KANTOR: No.

DEFENSE ATTORNEY: Did it feel like a knife?

KANTOR: Don't know. Razor blade, [I] don't know. Something small. Don't know.

. . .

DEFENSE ATTORNEY: [D]id you feel that this object was an explosive . . . ?

KANTOR: I didn't know; I don't know. Probably not, but you never know.

DEFENSE ATTORNEY: You were concerned, essentially, that it was a razor blade?

KANTOR: *My concern, essentially, was that I didn't know what it was.*

Following this exchange, the prosecuting attorney asked a series of questions designed to bolster the foundation for the search:

PROSECUTOR: Why did you look at [Joubert's] pocket after you felt those hard objects?

KANTOR: Because I wanted to see what it was. [sic]

PROSECUTOR: Okay. And what was your concern?

KANTOR: Weapon. Safety.

PROSECUTOR: [Is there any] weapon you can think of that would have been consistent with what you felt?

KANTOR: It could have been a small pocket knife. It could have been a typical razor, or the sheathing that goes on top of a razor. It could have been something.

Judge Souter initially dismissed this testimony as incredible. The judge declared that nothing in Joubert's pocket suggested the presence of a weapon.

THE COURT: [Joubert's pocket contained] two tiny little rocks, little pebbles of what apparently turned out to be cocaine. I cannot believe that these felt like a weapon. [It is ludicrous to suggest that] any reasonable person . . . would have ever reasonably suspected that those two little pebbles were somehow a weapon. . . . There's no way that that was a weapon[.]

Nevertheless, Judge Souter concluded that the search was legal even though the officer had no reason to believe that Joubert was armed. The judge upheld the search as incident to a parole arrest.

Then, weeks later (during Joubert's trial), it became apparent that Joubert's parole officer had never arrested him, nor had the parole officer ordered the police officers to arrest Joubert on his behalf. Judge Souter thus had to reconsider his ruling on Joubert's suppression motion.

This time, Judge Souter concluded that Kantor had conducted a valid pat-down search of Joubert's clothing for weapons. The judge decided that, under the circumstances, Kantor reasonably suspected that the "two little pebbles" in Joubert's pocket "might be a small knife or razor blade. . . . A small pistol [or] a small knife, either one."

*Alaska's Restriction on Pat–Down Searches: the limitations suggested by the Alaska Supreme Court in Zehrung v. State and adopted by this court in Jackson v. State*

Joubert's case is simply one instance of a more general problem: balancing an individual's interest in personal privacy against the twin law enforcement interests of protecting police officers and discovering evidence of a crime. In *Terry v. Ohio*[3] and *Sibron v. New York*[4], the United States Supreme Court held that, because of society's interest in protecting police officers from violence, police officers are authorized to conduct a warrantless pat-down search for weapons during an investigative stop if there is reason to believe that the suspect may be armed. Thirty years later, no one disputes that police officers may pat down a suspect's clothing in search of firearms, knives, or other weapons if there is ground for apprehension.[5] The problem has been to find a way to limit these "pat-down" searches, so that a police officer's authority to look for weapons does not become an implicit authority to conduct a full body search.

The authority to conduct a pat-down search, like all exceptions to the warrant requirement, is founded on practical necessity. As Justice Rabinowitz noted in his dissenting opinion in *McCoy v. State*[6],

> Possession of cocaine is a serious violation of our laws ... [.] Yet ... the fundamental rights expressed in [the search and seizure clause] of the Alaska Constitution must be considered.... What is involved in this appeal [is] the constitutionally protected ... security of the persons, papers, and effects of all citizens, including [this defendant], against unreasonable governmental searches and seizures.

It is a fundamental premise of search and seizure law that warrantless searches—searches conducted without prior judicial approval—

> are *per se* unreasonable under the Fourth Amendment [except for] a few specifically established and well-delineated exceptions. [These] exceptions are jealously and carefully drawn....

*Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971) (footnotes and internal quotations omitted). As Justice Rabinowitz elaborated in his *McCoy* dissent,

> The basic protection afforded by [the federal and state] constitutional guarantees [against unreasonable search and seizure] is to shield the individual's privacy against generalized exploratory intrusions by government officials. Unless all exceptions to the search warrant provisions are carefully drawn to require a showing of necessity for any departure from the warrant requirement, these constitutional prohibitions will be rendered ineffectual. The need to draw these exceptions carefully is of paramount significance because the great bulk of searches, both of the person and of premises, are warrantless searches....

*McCoy*, 491 P.2d at 141.

Twenty years ago, in *Zehrung v. State*[7], the Alaska Supreme Court took a step toward limiting the scope of warrantless searches. Rejecting federal law on this subject, the Alaska Supreme Court ruled that the Alaska Constitution limits the intensity of the search that police officers can perform on an arrestee. The court held that, absent articulable facts warranting a greater intrusion, police officers conducting a search incident to an arrest can only search the arrestee for weapons or for evidence of the suspected crime (if the suspected crime is the type of offense that would normally generate evidence that could be concealed on the arrestee's person).[8]

---

3. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

4. 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

5. *See Free v. State,* 614 P.2d 1374, 1378–79 (Alaska 1980).

6. 491 P.2d 127, 140 (Alaska 1971).

7. 569 P.2d 189 (Alaska 1977).

8. 569 P.2d at 199–200.

Although *Zehrung* dealt with searches incident to arrest (rather than pat-down searches during investigative stops), footnote 39 of the *Zehrung* opinion [9] is important to the resolution of Joubert's case. In this footnote, the supreme court indicated that even though the Alaska Constitution authorizes police officers to search an arrestee for weapons, there are limitations on the intensity of a weapons search. The court stated that,

> as to the permissible extent and limitations on the scope of such a warrantless search [for weapons], *see People v. Brisendine*, [13 Cal.3d 528, 119 Cal.Rptr.315] 531 P.2d 1099, 1107–09 (1975). *See also, People v. Collins*, [1 Cal.3d 658, 83 Cal.Rptr.179] 463 P.2d 403, 406–08 (1970).

The two California cases cited in this footnote are instructive regarding the limits placed on investigative searches for weapons.

In *Collins*, a police officer conducting a pat-down search felt a "lump" in the suspect's pocket. "Thinking it was a weapon", the officer reached into the pocket and pulled out the "lump"—which turned out to be a baggie of marijuana.[10] The California Supreme Court held that this search was illegal:

> In balancing the safety of police officers against the Fourth Amendment's proscription of unreasonable intrusions, ... a police officer [conducting a pat-down search for weapons] must be limited to "a careful exploration of the outer surfaces of [the] person's clothing" (*Terry v. Ohio*, 392 U.S. [1,] 16, 88 S.Ct. [1868,] 1877 [20 L.Ed.2d 889] [ (1968) ] ) until and unless [the officer] discovers specific and articulable facts reasonably supporting [the] suspicion [that the person is armed]. Only then may an officer exceed the scope of a pat-down and reach into the suspect's clothing for the limited purpose of recovering the object thought to be a weapon.

*Collins*, 83 Cal.Rptr. 179, 463 P.2d at 406. The court continued:

> Feeling a soft object in a suspect's pocket during a pat-down ... [normally] does not warrant an officer's intrusion into a

suspect's pocket to retrieve the object.... To permit officers to exceed the scope of a lawful pat-down ... by relying upon mere speculation that the object might be a razor blade concealed in a handkerchief, a "sap," or any other atypical weapon would be to hold that possession of any object ... invites a plenary search of an individual's person. Such a holding would render [the limitations on pat-down searches] meaningless.

*Id.* The California Supreme Court accordingly held that an officer conducting a pat-down for weapons may delve into a suspect's clothing or possessions only when (1) the pat-down discloses an object "which feels reasonably like a knife, gun, or club", or (2) when the officer is aware of "specific and articulable facts which reasonably support [the] suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down." [11]

The California court had occasion to visit this issue again in *Brisendine*. In *Brisendine*, police officers opened a suspect's backpack during a search for weapons; they discovered an opaque plastic bottle and a pair of envelopes. They then opened these objects and found drugs.[12] The California Supreme Court held that the search of these objects was illegal. In particular, the California court rejected the government's argument that these opaque objects might have contained weapons:

> In the ordinary *Terry*-type pat-down, ... an intrusion further than the outer clothing of the suspect is allowable only if the initial limited exploration discloses potential instruments of assault. To properly exceed the scope of a pat-down[,] the officer must be able to point to "specific and articulable facts reasonably supporting [the] suspicion" that the suspect is armed....
>
> [The search in Brisendine's case cannot be justified] by the assertion that the bottle and envelopes might possibly have contained unusual or atypical weapons. In

---

9.  *See id.*

10.  *See Collins*, 83 Cal.Rptr. 179, 463 P.2d at 405.

11.  *Id.* 83 Cal.Rptr. 179, 463 P.2d at 406.

12.  *See People v. Brisendine*, 13 Cal.3d 528, 119 Cal.Rptr. 315, 531 P.2d 1099, 1102 (1975).

*People v. Collins,* ... we rejected that [same] contention as applied to a "little lump" felt during the course of a pat-down.... *Collins* [established] the rule that "an officer who exceeds [the normal scope of] a pat-down without first discovering an object which reasonably feels like a knife, gun, or club must be able to point to specific and articulable facts which reasonably support a suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down."

*Brisendine,* 119 Cal.Rptr. 315, 531 P.2d at 1107–08 (citations omitted).

This court adopted these limitations on pat-down searches in *Jackson v. State.*[13] In *Jackson,* a police officer arrested the defendant on an outstanding warrant and then conducted a pat-down search of his clothing. During this pat-down, the officer located a wallet in Jackson's breast pocket; the wallet measured 3 inches by 2 inches by a half-inch.[14] The officer removed this wallet from Jackson's pocket and then proceeded to search it, ostensibly for weapons. But instead of weapons, the officer found a small baggie of white powder (which proved to be cocaine).[15] The officer testified that he performed this search because he had previously encountered razor blades, stiletto knives, and other small sheathed knives that could be concealed inside a container the size of Jackson's wallet.[16]

In analyzing—and ultimately rejecting—this offered rationale for the search of Jackson's wallet, this court discussed the *Collins* and *Brisendine* cases at length.[17] We also noted that "[n]o Alaska appellate decision has permitted a search of a container so small that it could hold only a razor blade, small pen knife, needle, or safety pin."[18] Ultimately, we held that when the police search an arrestee for weapons, the officers may search only "the person of the arrestee and any containers associated with the arrestee's person which [reasonably] may contain a

gun, a large knife, or a club."[19] Police officers are not authorized to search "smaller containers which could only contain atypical weapons such as a razor blade, a small knife, a safety pin, or a needle" unless the government can point to "specific and articulable facts which would lead a reasonable person to believe that such an atypical weapon was in the small container".[20]

Returning to the facts of Joubert's case, Officer Kantor felt something small and hard in the watch pocket of Joubert's jeans, so he decided to seize this object and examine it. Given this court's holding in *Jackson,* this type of warrantless seizure must be examined closely.

One obvious distinction between Joubert's case and *Jackson* is that *Jackson* involved two searches: the pat-down search that yielded the wallet, then the seizure and further search of this wallet to see if it contained weapons. In *Jackson,* the incriminating evidence was discovered during the search of Jackson's wallet, and thus the *Jackson* court did not have to consider the validity of the officer's initial decision to remove Jackson's wallet from his clothes. Technically speaking, this court only invalidated the second search—the intrusion into the wallet. One might therefore argue that *Jackson* has little to say about Joubert's case—because, in Joubert's case, there was no second intrusion: the officer conducted the pat-down and then, based on what he felt, he lifted Joubert's sweatshirt, thus revealing a rock of cocaine to plain view.

Despite this distinction, I conclude that *Jackson* governs Joubert's case. Although the *Jackson* court never addressed the legality of the officer's initial decision to remove Jackson's wallet from his breast pocket, *Jackson's* holding strongly suggests that even this initial intrusion was illegal. *Jackson* holds that a pat-down search for weapons must be confined to a search for "normal" or "typical" weapons in the absence of a

13.  791 P.2d 1023 (Alaska App.1990).

14.  *See id.* at 1024.

15.  *See id.*

16.  *See id.*

17.  *See id.* at 1026–28.

18.  *Id.* at 1028.

19.  *Id.*

20.  *Id.*

reasonable suspicion that atypical weapons are present. This being the law, it is difficult to justify the officer's seizure of the wallet from Jackson's pocket. The wallet was not big enough to hold a typical weapon—"a gun, a large knife, or a club"—and the wallet did not feel like a weapon itself.

The California Supreme Court has invalidated the seizure of evidence under similar circumstances. One example is the *Collins* case, discussed above. In *Collins*, the police officer seized a "lump" from the suspect's pocket—a lump that turned out to be a baggie of marijuana. As explained above, the California court held that the officer violated the state constitution when the officer "intru[ded] into [the] suspect's pocket to retrieve the object".

> To permit officers to exceed the scope of a lawful pat-down ... by relying on mere speculation that the object might be a razor blade concealed in a handkerchief, a "sap," or any other atypical weapon would be to hold that possession of any object ... invites a plenary search of an individual's person. Such a holding would render [the limitations on pat-down searches] meaningless.

*Collins*, 83 Cal.Rptr. 179, 463 P.2d at 406. Similarly, in *People v. Leib*[21], an officer conducting a pat-down search felt a "small round object" in the defendant's pants pocket; the object was "two inches long and a half inch in diameter". To the officer, this object felt like a plastic bottle.[22] The California court held that the officer acted illegally when he seized this object from the pants pocket.[23]

In *Francis v. State*[24], an officer conducting a pat-down seized a "medium" hard, round object "slightly larger than a human forefinger".[25] This object turned out to be a bag of heroin. Despite the officer's testimony that

the object "possibly could have been a knife", the Oklahoma court held that the officer acted illegally when he seized this object, since no reasonable person would have believed the object to be a weapon.[26]

This approach to pat-down searches and seizures is endorsed by Professor Wayne R. LaFave in his work, *Search and Seizure: A Treatise on the Fourth Amendment* (3rd ed. 1996), § 9.5(c), Vol. 4, pp. 276–280. As Professor LaFave notes, "it 'will be a rare case in which ... an officer [conducting a pat-down search] will not come upon some object ... secreted in the apparel of the suspect.' "[27] And because "something of the size and flexibility of a razor blade could be concealed virtually anywhere"[28], a pat-down search for weapons could potentially become the pretext for a complete search of the suspect's person and clothing. To prevent pat-down searches from becoming "plenary search[es] of an individual's person"[29], LaFave endorses the rule that an intrusion into the suspect's clothing should be permitted only when the object felt during the pat-down has a size, shape, and density consistent with a weapon.[30]

Of course, if the initial pat-down inspection reveals something that feels like a weapon, further intrusion and inspection is justified. For instance, in *People v. Mosher*[31], the California Supreme Court upheld a further intrusion when, during the initial pat-down, the officer felt a "sharp object like a knife blade". Even though the object turned out to be a watchband, the court concluded that the seizure was reasonable because the object felt like a weapon when touched through the suspect's clothing. But although the court upheld the seizure of the watchband, the court was careful to distinguish the watch-

---

**21.** 16 Cal.3d 869, 129 Cal.Rptr. 433, 548 P.2d 1105 (1976).

**22.** *See id.* 129 Cal.Rptr. 433, 548 P.2d at 1106.

**23.** *See id.* 129 Cal.Rptr. 433, 548 P.2d at 1108–09.

**24.** 584 P.2d 1359 (Okla.Crim.App.1978).

**25.** *Id.* at 1363.

**26.** *Id.* at 1363–64.

**27.** *LaFave*, p. 276 (quoting Cook, "The Art of Frisking", 40 Fordham L.Rev. 789, 796 (1972)).

**28.** *Id.*, p. 277 (quoting *United States v. Del Toro*, 464 F.2d 520 (2nd Cir.1972)).

**29.** *Collins*, 83 Cal.Rptr. 179, 463 P.2d at 406.

**30.** *See LaFave*, pp. 278–79.

**31.** 1 Cal.3d 379, 82 Cal.Rptr. 379, 461 P.2d 659, 668–69 (1969).

band (which could reasonably be taken for a knife blade) from "[a] box of matches, ... a container of pills, a wallet, coins, folded papers, and ... other small items ... [that] do not ordinarily feel like weapons."[32]

This is not to say that courts uniformly scrutinize pat-down searches carefully. Some courts have been quite ready to sustain a pat-down seizure on what can only be deemed speculative grounds. For instance, in *People v. Day*[33] the court upheld an officer's seizure of a rectangular object measuring approximately 1½ inches square by ¼ inch deep, based on the officer's speculation that this object might have been (or might have contained) a wrapped razor blade. The Illinois court stated:

> While this court respects the opinions of Professor LaFave and the justices cited in the *Collins* case, we simply do not agree that police officers should be subjected to danger of injury ... merely because some judges and commentators may lack the imagination of criminals.

*Day*, 148 Ill.Dec. 180, 560 N.E.2d at 488.

The Illinois court's decision probably represents a respectable school of Fourth Amendment philosophy. But this accommodating attitude toward pat-down searches and seizures is inconsistent with *Zehrung* and *Jackson*. Under *Jackson* (and the California cases that *Zehrung* and *Jackson* cite with approval), police officers conducting a pat-down search for weapons are not authorized to retrieve and inspect all objects that might conceivably be an atypical weapon or that might conceivably house an atypical weapon. When officers conduct a pat-down and find nothing that feels like a typical weapon, the officers are not authorized to intrude further into the suspect's clothes unless they can "point to specific and articulable facts" to support a reasonable belief that the person being searched is armed with an atypical weapon.

*Applying these limitations to Joubert's case*

In Joubert's case, the officer conducting the pat-down search felt two small objects in

the watch pocket of Joubert's jeans. Judge Souter referred to these objects as "two tiny little rocks, [two] little pebbles". Judge Souter ultimately concluded that the seizure of these "tiny little rocks" was justified because, felt through Joubert's clothing, these two small objects "might [have been] a small knife or razor blade.... A small pistol [or] a small knife, either one."

Judge Souter's remark about a "small pistol" is obviously hyperbole. Even if the hidden objects had completely filled the watch pocket of Joubert's jeans, they could scarcely have approached the size of a "small pistol"—at least, not any normal pistol. Moreover, Joubert's attorney asked Officer Kantor directly if the objects in Joubert's pocket felt like a firearm; the officer replied "no". Thus, even if Judge Souter truly found that the objects in Joubert's pocket felt like a small pistol, that finding was clearly erroneous.[34]

Given the dimensions of the watch pocket in a pair of jeans, it is conceivable that a small knife or a razor blade could be placed in this pocket. But, as just explained, the fact that the small object in Joubert's pocket was *conceivably* a small knife or razor blade is not sufficient to justify Kantor's search. Under *Jackson*, Kantor's search for an atypical weapon of this sort would be permissible only if the State presented specific and articulable facts to support a reasonable belief that Joubert in fact had such a weapon in his pocket.

Even viewing Kantor's testimony in the light most favorable to the State, this testimony failed to establish the "articulable and specific facts" required by *Jackson*. Not only did Kantor fail to provide articulable reasons for supposing that the object in Joubert's pants was an atypical weapon; he never even asserted that he *believed* the object in Joubert's pocket was an atypical weapon.

Kantor was repeatedly asked what he thought was in Joubert's pocket; over and over, Kantor's response was, "Don't know."

---

**32.** *Id.* 82 Cal.Rptr. 379, 461 P.2d at 668.

**33.** 202 Ill.App.3d 536, 148 Ill.Dec. 180, 560 N.E.2d 482 (1990).

**34.** *See Bobby v. State*, 950 P.2d 135, 138 (Alaska App.1997) (noting that the trial court's factual determinations will stand unless clearly erroneous).

Kantor speculated that the object in Joubert's pocket

> could have been a small pocket knife[, or it] could have been a typical razor, or the sheathing that goes on top of a razor. It could have been something.

The statement that appears to best summarize Kantor's testimony is the answer he gave when Joubert's attorney asked him if he was concerned that Joubert might have a razor blade in his pocket. Kantor answered that his essential concern "was that I didn't know what [the object] was."

This testimony fails to satisfy *Jackson.* Instead of the "articulable and specific facts" required by *Jackson,* the State's evidence consisted of "could have been" and "don't know". In essence, Kantor testified that he searched Joubert's pocket because he could not definitively rule out the possibility that the pocket contained a razor blade, a small pen knife, or some other small, atypical weapon.[35] This is precisely what *Jackson* prohibits.

In *Jackson,* we held that the State can not justify an intrusion into a suspect's clothing by showing merely that the object felt by the officer "could have been" an atypical weapon—that the presence of an atypical weapon could not be ruled out. *Jackson* requires the State to present an affirmative reason to believe that the suspect's clothing contained an atypical weapon. Even viewing Kantor's testimony in the light most favorable to the State, it is clear that he offered no articulable and specific facts to support a reasonable suspicion that the object in Joubert's pocket was an atypical weapon. Thus, the search of Joubert's pocket was impermissible under Alaska law.

For these reasons, the cocaine found in Joubert's pocket must be suppressed, and Joubert's conviction must be reversed.

COATS, Chief Judge, dissenting.

This case involves a search incident to arrest. Under the leading federal case of *United States v. Robinson,*[1] once a suspect is arrested based upon probable cause, the police may conduct a full search of the suspect's person for weapons and evidence. Alaska law differs. If a person is arrested for a crime where evidence of that crime could be concealed on the suspect, the police can search for evidence of the crime for which the person was arrested.[2] Where no evidence of the crime for which the suspect was arrested could exist on their person, the police may conduct a search for weapons. Under Alaska law, the police can certainly conduct a pat-down search for typical weapons such as a knife, gun, or club.[3] The case before us raises the question of the authority of the police to conduct a search incident to a lawful arrest for atypical weapons.

We last visited this question in *Jackson v. State.*[4] In *Jackson,* the suspect was arrested under authority of an arrest warrant which had been issued for failure to appear on shoplifting and driving while license suspended charges.[5] However, the arresting officer was not aware of the underlying charges supporting the warrant. While placing Jackson under arrest, the arresting officer conducted a search of Jackson which included a search of Jackson's wallet. The officer stated that the reason he searched Jackson's wallet was to ensure that the wallet did not contain razor blades or other atypical weapons. During the wallet search, the officer discovered cocaine. Jackson was charged with cocaine possession. Jackson moved to suppress the evidence. The trial court denied the motion. On appeal, this court explored the authority of police officers to search for weapons under Alaska law in conducting a search incident to arrest.

---

**35.** *Jackson* singles out razor blades and small pen knives as "atypical" weapons. *Jackson,* 791 P.2d at 1028.

**1.** 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

**2.** *See Jackson v. State,* 791 P.2d 1023, 1028 (Alaska App.1990).

**3.** *See id.*

**4.** *Id.*

**5.** *See id.* at 1024.

This court recognized a crucial distinction between a pat-down search conducted during an investigative stop and a search incident to arrest. The court quoted from Justice Thurgood Marshall's dissent in *United States v. Robinson:*

> [An investigative] stop involves a momentary encounter between officer and suspect, while an in-custody arrest places the two in close proximity for a much longer period of time. If the individual happens to have a weapon on his person, he will certainly have much more opportunity to use it against the officer in the in-custody situation. The prolonged proximity also makes it more likely that the individual will be able to extricate any small hidden weapon which might go undetected in a weapons frisk, such as a safety pin or razor blade. In addition, a suspect taken into custody may feel more threatened by the serious restraint on his liberty than a person who is simply stopped by an officer for questioning, and may therefore be more likely to resort to force.[ 6]

We noted Justice Marshall's observation that the police discovered the contraband on Robinson during the search of a cigarette package. Justice Marshall concluded that, if the police were concerned about safety, they always had the option to impound the cigarette package. A search was therefore unnecessary.[7]

In *Jackson* we also relied on a California Supreme Court case, *People v. Brisendine.*[8] In *Brisendine,* the defendant was arrested at a remote campsite on a minor charge. The officer searched the arrestee's knapsack, ostensibly for weapons, and found drugs. We quoted the following language:

> [An] officer who exceeds a pat-down without first discovering an object which feels reasonably like a knife, gun, or club must be able to point to specific and articulable facts which reasonably support a suspicion that the particular suspect is armed

with an atypical weapon which would feel like the object felt during the pat-down.

> . . .

Typically in cases of warrantless weapons searches the police must be able to point to specific and articulable facts which reasonably justify a belief that the suspect is armed. In the ordinary citation situation the fact of the arrest alone will not supply this justification and additional facts must be shown. In the case of transportation in the police vehicle, however, or in the analogous circumstances here, the necessity of close proximity will itself provide the needed basis for a protective pat-down of the person. To intrude further than a pat-down, the officer must provide additional specific and articulable facts necessitating the additional intrusion.[ 9]

In *Jackson* we stated our holding as follows:

> We therefore conclude that a search incident to an arrest, where no evidence of the crime charged could exist on the person, may extend to the person of the arrestee and any containers associated with the arrestee's person which may contain a gun, a large knife, or a club. Search of smaller containers which could only contain atypical weapons such as a razor blade, a small knife, a safety pin, or a needle must be supported by specific and articulable facts which would lead a reasonable person to believe that such an atypical weapon was in the small container.[ 10]

Applying this analysis, we suppressed the evidence which the officer found in Jackson's wallet.

Thus, *Jackson* clearly stands for the proposition that an officer cannot search a wallet, backpack, or other closed container for atypical weapons without "specific and articulable facts which would lead a reasonable person to believe that such an atypical weapon was in the small container." 11 But the law is less clear about how to treat a search for atypical weapons on the suspect's person which are not in a container.

**6.** *Id.* at 1026 (quoting *Robinson,* 414 U.S. at 257–59, 94 S.Ct. 467).

**7.** *See id.*

**8.** 13 Cal.3d 528, 119 Cal.Rptr. 315, 531 P.2d 1099 (1975).

**9.** *Jackson,* 791 P.2d at 1028 (quoting *Brisendine,* 119 Cal.Rptr. 315, 531 P.2d at 1108–09 (citations omitted)).

**10.** *Id.*

**11.** *Id.*

It seems to me that an atypical weapon in a container such as a wallet or a backpack can be distinguished from a razor blade or other atypical weapon which is on the suspect's person. First, a person generally has a higher expectation of privacy in a container such as a wallet. Second, as Justice Marshall pointed out in his dissent in *Robinson*, if the police suspect a razor blade in a wallet or backpack, they do have the option of seizing the item and keeping it away from the suspect. If a suspect has a razor blade in his wallet or in his backpack, a search for that item would involve a major invasion of privacy. If we were to allow that sort of intrusion, there seems little reason not to adopt the federal rule stated in *Robinson*. Yet, when the razor blade is located on the suspect, the balance is less clear. There is a stronger case for allowing a search to promote officer safety.

In analyzing the testimony in the present case, we are to look at the facts in the light most favorable to the prevailing party, the state. Officer Kantor's testimony is set out on pages 755–756 of Judge Stewart's majority opinion. As I read Officer Kantor's testimony, he felt something small and hard in the suspect's pocket which he could not identify. He stated he was concerned that the object might be a weapon, similar to a small knife or a razor blade. Officer Kantor conceded that he did not know what the item was, but he testified he was concerned that it might be a small weapon.

Judge Souter originally concluded that Officer Kantor's conclusion that the two rocks of cocaine could feel like a knife or razor blade was preposterous. Yet after actually examining the rocks of cocaine, Judge Souter arrived at a different conclusion. He stated:

[A]t the time of the suppression hearing, relying on what I saw and heard but without the opportunity to feel the evidence which is a big difference, I ruled that Officer Kantor's stated suspicion that these two rocks of cocaine might be a small knife or razor was ludicrous. That's wrong. Considering that the defendant was wearing jeans[,] that these two so-called rocks of cocaine were in his watch pocket and that they were also covered by the thickness of his sweatshirt, there is no doubt in my mind at this point after having myself felt these two rocks of cocaine, physically, for the first time, there's no doubt in my mind that Officer Kantor's suspicion that this might be a small knife or a razor blade was reasonable. That's a reasonable suspicion based on articulable facts.

Upon examining the evidence and evaluating Officer Kantor's testimony, Judge Souter concluded that Officer Kantor had reasonable suspicion that Joubert might have had a small knife or razor blade in his pocket. In my view this finding would support Officer Kantor's search of Joubert's pocket to make sure that he did not have such a weapon. I accordingly dissent from the decision to suppress the evidence seized as a result of that search.